# Exhibit 2

**Policy Number:**     **ELU122778-11**

**Renewal of Number**    ELU118596-10

**Indian Harbor Insurance Company**

Members of the XL America Companies

---

**MANAGEMENT LIABILITY AND
COMPANY REIMBURSEMENT
INSURANCE POLICY DECLARATIONS**

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR, IF APPLICABLE, THE OPTIONAL EXTENSION PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY**

**This insurance has been placed with an insurer that is not licensed by the state of Michigan. In case of insolvency, payment of claims may not be guaranteed.**

---

**Item 1.**     **Name and Mailing Address of Parent Company:**

Capitol Bancorp, Ltd.
200 North Washington Square
Lansing, MI  48933-1320

---

**Item 2.**     **Policy Period:**    **From:**    September 09, 2011    **To:**    September 09, 2012

                 **At 12:01 A.M. Standard Time at your Mailing Address Shown Above**

---

**Item 3.**     **Limit of Liability:**

$20,000,000  Aggregate each **Policy Period** (including Defense **Expenses**)

---

**Item 4.**     **Retentions:**

N/A     each **Insured Person** under INSURING AGREEMENT I (A)

$500,000    each **Claim** under INSURING AGREEMENT I (B)

$500,000    each **Claim** under INSURING AGREEMENT I (C)

---

**Item 5.**     **Optional Extension Period:**

Length of Optional Extension Period:

(Either one year or two years after the end of the **Policy Period**, at the election of the **Parent Company**)

Premium for Optional Extension Period:      One Year:   $2,500,000.00

                                          Two Years:   N/A

                                     Three Years:   N/A

---

**Item 6.**     **Pending and Prior Litigation Date:**     September 09, 2010

---

**Item 7.**     **Notices required to be given to the Insurer must be addressed to:**

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT  06103
Toll Free Telephone: 877-953-2636

---

**MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT INSURANCE POLICY DECLARATIONS**

---

| | |
|---|---|
| **Item 8.** | **Premium:** |

| | | |
|---|---|---|
| | Taxes, Surcharges or Fees: | $0.00 |
| | Total Policy Premium: | $1,250,000.00 |

---

| | |
|---|---|
| **Item 9.** | **Policy Forms and Endorsements Attached at Issuance:** |

DO 71 00 09 99   XL 82 01 07 07   XL 80 24 03 03   XL-MISOP   DO 83 01 01 00   DO 80 142 10 01
DO 80 189 06 06   DO 80 176 06 02   DO 83 59 09 02   XL 83 23 09 00   DO 80 500 11 08
Manuscript 11448 11 10   DO 80 67 05 02   Manuscript 11447 11 10   DO 80 12 04 00   DO 80 16 05 00
DO 80 48 07 00   Manuscript 7404 08 07   DO 80 301 12 04   DO 80 118 05 01   DO 80 286 08 04
DO 80 312 05 05   DO 80 551 02 10   DO 83 09 06 00   DO 83 12 08 00   DO 80 284 08 04
DO 80 293 10 04   DO 80 569 08 10   Manuscript 96 02 01

---

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

---

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

David B. Duclos
President

Kenneth P. Meagher
Secretary

**Indian Harbor Insurance Company**

Stanford Decl. Ex. 2 – Page 2

**Management Liability**
**DO 71 00 09 99**

### MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.**
**PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

### I.  INSURING AGREEMENTS

(A)  The Insurer shall pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act** or **Employment Practices Wrongful Act,** except for **Loss** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

(B)  The Insurer shall pay on behalf of the **Company Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Insured Persons** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act** or **Employment Practices Wrongful Act.**

(C)  The Insurer shall pay on behalf of the **Company Loss** resulting solely from any **Securities Claim** first made against the **Company** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Company Wrongful Act.**

### II.  DEFINITIONS

(A)  "**Application**" means:

   (1)  the application attached to and forming part of this Policy; and

   (2)  any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)  "**Change In Control**" means:

   (1)  the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets by another entity such that the **Parent Company** is not the surviving entity;

   (2)  the acquisition by any person, entity or affiliated group of persons or entities of the right to vote, select or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

   (3)  the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the **Parent Company**.

(C)  "**Claim**" means:

   (1)  a written demand for monetary or non-monetary relief;

   (2)  any civil proceeding in a court of law or equity, or arbitration;

   (3)  any criminal proceeding which is commenced by the return of an indictment; and

   (4)  a formal civil, criminal, administrative regulatory proceeding or formal investigation of an **Insured Person** or the **Company** (but with respect to the **Company** only for a **Company Wrongful Act**) which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying in writing such **Insured Person** or the **Company** as a person or entity against whom a proceeding as described in (C)(2) or (3) above may be commenced, including any

Stanford Decl. Ex. 2 – Page 3

proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body having jurisdiction over any **Employment Practices Wrongful Act**.

(D)   "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the Policy Period, subject to GENERAL CONDITIONS VI (D).

(E)   "**Company Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the Company in connection with a **Securities Claim**.

(F)   "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense of any **Claim** including the premium for an appeal bond, attachment bond or similar bond but will not include applying for or furnishing such bond. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers or employees.

(G)   "**Employment Practices Wrongful Act**" means any actual or alleged:

   (1)   wrongful termination of employment whether actual or constructive;

   (2)   employment discrimination of any kind including violation of any federal, state or local law involving employment or discrimination in employment which would deprive or potentially deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee, because of such person's race, color, religion, age, sex, national origin, disability, pregnancy, or other protected status;

   (3)   sexual or other harassment in the workplace; or

   (4)   wrongful deprivation of career opportunity, employment related misrepresentations, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H)   "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Ac**t.

(I)   "**Insured**" means the **Insured Persons** and the **Company**.

(J)   "**Insured Person**" means:

   (1)   any past, present or future director or officer, or member of the Board of Managers, of the **Company** and those persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

   (2)   any past, present or future employee of the **Company** to the extent any **Claim** is a **Securities Claim**;

   (3)   an individual identified in (J)(1) above who, at the specific written request of the **Company**, is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**;

   (4)   any individual identified in (J)(1) above who, at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, at a **Joint Venture**; or

   (5)   the lawful spouse of any person set forth in the above provisions of this definition, but only to the extent the spouse is a party to any Claim solely in their capacity as a spouse of such persons and only for the purposes of any Claim seeking damages recoverable from marital community property, property jointly held by any such person and spouse, or property transferred from any such person to the spouse.

In the event of the death, incapacity or bankruptcy of an individual identified in (J)(1), (2), (3), (4) or (5) above, any **Claim** against the estate, heirs, legal representatives or assigns of such individual for a **Wrongful Act** or **Employment Practices Wrongful Act** of such individual will be deemed to be a **Claim** against such individual.

(K) "**Interrelated Wrongful Acts**" means any **Wrongful Act**, **Company Wrongful Act**, or **Employment Practices Wrongful Act** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions or events.

(L) "**Joint Venture**" means any corporation, partnership, joint venture, association or other entity, other than a **Subsidiary**, during any time in which the Parent Company, either directly or through one or more **Subsidiary(s)**;

   (1) owns or controls at least thirty three percent (33%), but not more than fifty percent (50%), in the aggregate of the outstanding securities or other interests representing the right to vote for the election or appointment of those persons of such an entity occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**; or

   (2) has the right, by contract, ownership of securities or otherwise, to elect, appoint or designate at least thirty three (33%) of those persons described in (L)(1) above.

(M) "**Loss**" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and **Defense Expenses** in excess of the Retention that the **Insured** is legally obligated to pay. **Loss** will not include:

   (1) the multiplied portion of any damage award;

   (2) fines, penalties or taxes imposed by law; or

   (3) matters which are uninsurable under the law pursuant to which this Policy is construed.

   **NOTE**: With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law. If, based on the written opinion of counsel for the **Insured**, punitive damages are insurable under applicable law the Insurer will not dispute the written opinion of counsel for the Insured.

(N) "**Non-Profit Entity**" means a corporation or organization other than the **Company**, which is exempt from taxation under Section 501 (c)(3), (4) and (10) of the Internal Revenue Code as amended or any rule or regulation promulgated thereunder.

(O) "**Parent Company**" means the entity named in ITEM 1 of the Declarations.

(P) "**Policy Period"** means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(Q) "**Securities Claim**" means a **Claim** made against an Insured for:

   (1) any actual or alleged violation of the Securities Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any similar federal or state statute or any rules or regulations promulgated thereunder; or

   (2) any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty arising from or in connection with the purchase or sale of, or offer to purchase or sell any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the **Company** or occurs in the open market.

(R) "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one or more **Subsidiary(s)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(S) "**Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person** while acting in his or her capacity as an:

   (1) **Insured Person** of the **Company** or a person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary**;

Stanford Decl. Ex. 2 – Page 5

(2)    **Insured Person** of the **Company** who at the specific written request of the **Company** is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**; or

(3)    **Insured Person** of the **Company**, who at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**.

## III.   EXCLUSIONS

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured Person**, or with respect to INSURING AGREEMENT (C), the **Company**:

(A)    for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof; however, this EXCLUSION (A) will not apply to any allegations of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act**;

(B)    for any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste. With respect to a **Claim** made under INSURING AGREEMENT (A) only, this EXCLUSION (B) will not apply to a **Claim** unless a court of competent jurisdiction specifically determines the **Company** is not permitted to indemnify the **Insured Person**;

**NOTE**: EXCLUSIONS (A) and (B) above will not apply with respect to a **Securities Claim** brought by a security holder of the **Company**, or a derivative action brought by or on behalf of, or in the name or right of, the **Company,** and brought and maintained independently of, and without the solicitation, assistance, participation or intervention of, an **Insured**.

(C)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulations promulgated thereunder or any similar law, federal, state or local law or regulation;

(D)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to the Pending and Prior Litigation Date set forth in ITEM 6 of the Declarations;

(E)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability policy, Directors and Officers liability policy or similar policy;

(F)    brought about or contributed to in fact by any:

    (1)    intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

    (2)    profit or remuneration gained by any Insured to which such Insured is not legally entitled;

    as determined by a final adjudication in the underlying action or in a separate action or proceeding;

(G)    by, on behalf of, or at the direction of the **Company**, except and to the extent such **Claim**:

    (1)    is brought derivatively by a security holder of the **Company** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or

intervention of an **Insured Person** or the **Company**; or

(2)    is brought by the Bankruptcy Trustee or Examiner of the **Company** or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company**;

(H)    by, on behalf of, at the direction of or in the name or right of any Non-Profit Entity or Joint Venture against an Insured Person for a Wrongful Act or Employment Practices Wrongful Act while acting in his or her capacity as a director, officer, trustee, regent or governor of such, or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an Insured Person of the Company, regardless of the name or title by which such position is designated; or

(I)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an **Insured Person** acting in their capacity as a **Insured Person** of any entity other than the **Company**, **Non-Profit Entity** or **Joint Venture**.

No conduct of any **Insured Person** will be imputed to any other Insured to determine the application of any of the above EXCLUSIONS.

## IV.    LIMIT OF LIABILITY, INDEMNIFICATION AND RETENTIONS

(A)    The Insurer shall pay the amount of **Loss** in excess of the applicable Retention(s) set forth in ITEM 4 of the Declarations up to the Limit of Liability set forth in ITEM 3 of the Declarations.

(B)    The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy. Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

(C)    With respect to the Company's indemnification of its **Insured Persons**, the certificate of incorporation, charter, by-laws, articles of association, or other organizational documents of the **Parent Company**, each **Subsidiary** and each **Non-Profit Entity** or **Joint Venture**, will be deemed to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

(D)    The Retention applicable to INSURING AGREEMENT (B) shall apply to any **Loss** as to which indemnification by the **Company**, **Non-Profit Entity** or **Joint Venture** is legally permissible, whether or not actual indemnification is made unless such indemnification is not made by the **Company**, **Non-Profit Entity** or **Joint Venture** solely by reason of its financial insolvency. In the event of financial insolvency, the Retention(s) applicable to INSURING AGREEMENT (A) shall apply.

(E)    If different retentions are applicable to different parts of any **Loss**, the applicable Retention(s) will be applied separately to each part of such Loss, and the sum of such Retention(s) will not exceed the largest applicable Retention set forth in ITEM 4 of the Declarations.

(F)    Notwithstanding the foregoing, solely with respect to a **Securities Claim**, no **Retention** shall apply to such **Claim** and the **Insurer** will reimburse those **Defense Expenses** incurred by the **Insured** if:

(1)    the **Securities Claim** is dismissed, or there is a stipulation to dismiss the **Securities Claim**, with or without prejudice and without the payment of any monetary consideration by the **Insured**;

(2)    there is a final judgment of no liability obtained prior to or during trial, in favor of the **Insured**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or

(3)    there is a final judgment of no liability obtained after trial, in favor of the Insured, after the exhaustion of all appeals.

Any reimbursement in the case of (F)(1), (2), or (3) above will only occur if ninety (90) days after the date of dismissal, stipulation, final judgment of no liability is obtained and only if:

(a)    the same **Securities Claim** (or a **Securities Claim** containing **Interrelated Wrongful Acts**) is not brought again within that time; and

(b)    the **Insured** provides the Insurer with an Undertaking in a form acceptable to the Insurer that

such reimbursement of the applicable Retention(s) will be paid back to the Insurer in the event the **Securities Claim** (or a **Securities Claim** containing **Interrelated Wrongful Acts**) is brought after the ninety (90) day period.

**V.   DEFENSE, SETTLEMENT AND ALLOCATION OF LOSS**

(A)   It shall be the duty of the **Insured** and not the duty of the Insurer to defend any **Claim** under this Policy.

(B)   No **Insured** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(C)   Upon the written request of an **Insured**, the Insurer will advance **Defense Expenses** on a current basis in excess of the applicable Retention, if any, before the disposition of the **Claim** for which this policy provides coverage. As a condition of the advancement of **Defense Expenses**, the Insurer may require a written undertaking, in a form satisfactory to the Insurer, which will guarantee the repayment of any **Loss** including **Defense Expenses** paid to or on behalf of the Insured if it is finally determined that the **Loss** incurred is not covered under this Policy.

(D)   If both **Loss** covered by this Policy and Loss not covered by this Policy are incurred, either because a **Claim** made against the Insured contains both covered and uncovered matters, or because a **Claim** is made against both the Insured and others (including the **Company** for **Claims** other than **Securities Claims**) not insured under this Policy, the **Insured** and the Insurer will use their best efforts to determine a fair and appropriate allocation of **Loss** between that portion of Loss that is covered under this Policy and that portion of Loss that is not covered under this Policy. Additionally, the **Insured** and the Insurer agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by, the Insured and others.

(E)   In the event that an agreement cannot be reached between the Insurer and the **Insured** as to an allocation of **Loss**, as described in (D) above, then the Insurer shall advance that portion of **Loss** which the **Insured** and the Insurer agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

**VI.   GENERAL CONDITIONS**

(A)   **NOTICE**

(1)   As a condition precedent to any right to payment under this Policy with respect to any **Claim**, the **Insured** shall give written notice to the Insurer of any Claim as soon as practicable after it is first made.

(2)   If, during the **Policy Period**, the **Insured** first becomes aware of a specific **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** and if, during the **Policy Period**, the Insured:

(a)   provides the Insurer with written notice of the specific **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, the circumstances by which the Insured first became aware of such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act**; and

(b)   requests coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act**;

then any **Claim** subsequently made arising out of such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** will be treated as if it had been first made during the **Policy Period.**

(3)   All notices under GENERAL CONDITIONS (A)(1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 7 of the Declarations; Attention: Claim Department.

**(B)     INTERRELATED CLAIMS**

All **Claims** arising from the same **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the time at which the earliest such **Claim** is made or deemed to have been made pursuant to GENERAL CONDITIONS (A)(1) above or GENERAL CONDITIONS (A)(2), if applicable.

**(C)     OTHER INSURANCE AND SERVICE IN CONNECTION WITH NON-PROFIT ENTITIES AND JOINT VENTURES**

(1)     All **Loss** payable under this Policy will be specifically excess of and will not contribute with any other insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy. This Policy will not be subject to the terms of any other insurance policy.

(2)     All coverage under this Policy for **Loss** from **Claims** made against the **Insured Persons** while acting in their capacity as a director, officer, trustee, regent or governor of a **Non-Profit Entity** or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of the **Insured Persons** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture** will be specifically excess of and will not contribute with, any other insurance or indemnification available to such **Insured Person** from such **Non-Profit Entity** or **Joint Venture** by reason of their service as such.

**(D)     MERGERS AND ACQUISITIONS (CHANGES IN EXPOSURE OR CONTROL)**

(1)     If during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** occurring after the consummation of the transaction.

(2)     If, however, by reason of the transaction (or series of transactions) described in (D)(1) above, the entity, assets, **Subsidiary** or liabilities so acquired or so assumed, exceed thirty five percent (35%) of the total assets or liabilities of the **Company**, as represented in the **Company's** most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any **Loss** involving a **Claim** for a **Wrongful Act**, **Company Wrongful Act**, or **Employment Practices Wrongful Act** that occurred after the transaction has been consummated. Coverage beyond the ninety (90) day period will be provided only if:

(a)     the Insurer receives written notice containing full details of the transaction(s); and

(b)     the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate.

(3)     With respect to the acquisition, assumption, merger, consolidation or otherwise of any entity, asset, **Subsidiary** or liability as described in (D)(1) and (2) above, there will be no coverage available under this Policy for **Claims** made against the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary**, liability, or **Insured Person** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** committed any time during which such entity, asset, liability or **Subsidiary** is not an **Insured**.

(4)     If during the **Policy Period** any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who, because of their service with such **Subsidiary**, were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(5)     If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** against an **Insured** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** committed or allegedly committed up to the time of the **Change In Control**; and

(a)     coverage will cease with respect to any **Claim** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** committed subsequent to the **Change In Control**; and

**Management Liability**
**DO 71 00 09 99**

    (b)    the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control.**

**(E)**   **CANCELLATION AND RENEWAL OF COVERAGE**

    (1)    Except for the nonpayment of premium, as set forth in (E)(2) below, the Parent Company has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

    (2)    The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured,** if applicable.

    (3)    The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

**(F)**   **OPTIONAL EXTENSION PERIOD**

    (1)    If either the **Parent Company** or the Insurer does not renew this Policy, the **Parent Company** shall have the right, upon payment of an additional premium set forth in ITEM 5 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the period of time set forth in ITEM 5 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Ac**t, **Company Wrongful Act**, or **Employment Practices Wrongful Act**, occurring prior to the Policy Expiration Date.

    (2)    As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full. The right of the **Parent Company** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Parent Company** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

    (3)    If the **Parent Company** elects to purchase the Optional Extension Period as set forth in (F)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

    (4)    The purchase of the Optional Extension Period will not in any way increase the Limit Of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period.**

**(G)**   **ASSISTANCE, COOPERATION AND SUBROGATION**

    (1)    The **Insured** agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

    (2)    In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured**. The I**nsured** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

**(H) EXHAUSTION**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss,** the premium as set forth in ITEM 8 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind

whatsoever under this Policy.

**(I)     REPRESENTATION CLAUSE**

The **Insured** represents that the statements and particulars contained in the **Application** as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy. No knowledge or information possessed by any Insured will be imputed to any other Insured except for material facts or information known to the person(s) who signed the Application. In the event that any of the particulars or statements in the **Application** are untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

**(J)     ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY**

(1)     No action may be taken against the Insurer unless, as a condition precedent thereto:

    (a)     there has been full compliance with all of the terms and conditions of this Policy; and

    (b)     the amount of the obligation of the **Insured** has been finally determined either by judgment against the Insured after actual trial, or by written agreement of the **Insured**, the claimant and the Insurer.

(2)     Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the Insurer to determine their liability, nor may the **Insured** implead the Insurer in any **Claim**.

(3)     Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)     Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations may only be waived or changed by written endorsement.

**(K)     AUTHORIZATION AND NOTICES**

It is understood and agreed that the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect to:

(1)     the payment of the premiums;

(2)     the receiving of any return premiums that may become due under this Policy;

(3)     the giving of all notices to the Insurer as provided herein; and

(4)     the receiving of all notices from the Insurer.

**(L) ENTIRE AGREEMENT**

The **Insured** agrees that the Declarations, Policy, including the endorsements, attachments and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured** relating to this insurance.

# POLICYHOLDER DISCLOSURE

## NOTICE OF TERRORISM
## INSURANCE COVERAGE

**Coverage for acts of terrorism is already included in your current policy. You are hereby notified that under the Terrorism Risk Insurance Program Reauthorization Extension Act of 2007, the definition of "act of terrorism" has changed.  As defined in Section 102(1) of the Act:  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in concurrence with the Secretary of the State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Under your existing coverage, any losses caused by certified acts of terrorism may be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. However, your policy may contain other exclusions that may affect your coverage.   The Terrorism Risk Insurance Program Reauthorization Extension Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.**

**The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.  Any premium waiver is only valid for the current Policy Period.**

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION EXTENSION ACT OF 2007, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer: **Indian Harbor Insurance Company**

Policy Number: **ELU122778-11**

_____
Signature of Insured

_____
Print Name and Title

_____
Date

# IN WITNESS

## INDIAN HARBOR INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-0636
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

| | |
|---|---|
| *S Maag* | *Toni Ann Perkins* |
| Seraina Maag | Toni Ann Perkins |
| President | Secretary |

LAD 400 IHIC 0211
©2011 X.L. America, Inc.  All rights reserved.  May not be copied without permission.

## NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC and possibly the U.S. Department of State.  **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as *Specially Designated Nationals and Blocked Persons.*  This list can be found on the U.S. Department of the Treasury's web site - http//www.treas.gov/ofac.

The Secretary of the Treasury also has identified a number of entities in the insurance, petroleum, and petrochemicals industries determined to be owned or controlled by the Iranian government. Business transactions with any of these entities are expressly prohibited.  These entities have been added to OFAC's list of *Financial Institutions Determined To Be Owned or Controlled by the Government of Iran.*  This list can be found on the U.S. Department of the Treasury's web site - http://www.treas.gov/offices/enforcement/lists/

In accordance with OFAC regulations, or any applicable regulation promulgated by the U.S. Department of State, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

PN CW 05 1010

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
©2010 X.L. America, Inc.  All rights reserved.  May not be copied without permission.

# NOTICE TO POLICYHOLDERS

FRAUD NOTICE

| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Colorado | It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claiming with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies. |
| District of Columbia | **WARNING**:  It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurance company files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Hawaii | For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

PN CW 01 0210

Page 1
© 2009 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
|---|---|
| New Mexico | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties. |
| New York | **All Commercial Insurance Forms, Except As Provided for Automobile Insurance**:  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**Automobile Insurance Forms**:  Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire Insurance**:  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime. The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| Oklahoma | **WARNING**:  Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| Pennsylvania | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance Forms**: Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |

Page 2
© 2009 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| Puerto Rico | Any person who knowingly and with the intention to defraud includes false information in an application for insurance or file, assist or abet in the filing of a fraudulent claim to obtain payment of a loss or other benefit, or files more than one claim for the same loss or damage, commits a felony and if found guilty shall be punished for each violation with a fine of no less than five thousands dollars ($5,000), not to exceed ten thousands dollars ($10,000); or imprisoned for a fixed term of three (3) years, or both.  If aggravating circumstances exist, the fixed jail term may be increased to a maximum of five (5) years; and if mitigating circumstances are present, the jail term may be reduced to a minimum of two (2) years. |
|---|---|
| Rhode Island | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefitor knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Tennessee | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers Compensation**:  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| Utah | **Workers Compensation**:  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| Virginia | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| Washington | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| West Virginia | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| All Other States | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison. |

© 2009 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# PRIVACY POLICY

The XL America, Inc. insurance group ("We" or "Our Group"), respects the privacy of all personal information. Thus, the information We collect from our customers, or potential customers, is treated with the highest degree of privacy.

We have developed a Privacy Policy for Our Group that:
1) ensures the security of your information; and
2) complies with state and federal privacy laws.

The term "personal information" includes all information we obtain about a customer and maintain in our files.  All persons with access to personal information are required to follow this policy.

## Our Privacy Promise

Your privacy rights are important to us.  Analysis of your private information allows us to provide to you excellent service and products.  Your trust in us depends upon the security and integrity of our records.  Thus, We promise to:

1) Follow strict security standards.  This will protect any information you share with us, or that we receive about you.
2) Verify and exchange data regarding your credit and financial status only for the purposes of: underwriting; policy administration; or risk management.  We will obtain only reputable references and services.
3) Collect and use the least amount of information necessary to:
   a. advise you and deliver excellent service and products; and
   b. conduct our business.
4) Train our employees to securely handle private information.  We will only permit authorized employees to have access to such information.
5) Not disclose data about you or your business to any organization outside Our Group or to third party providers unless:
   a. we disclose to you our intent to do so; or
   b. we are required to do so by law.
6) Not disclose medical information unless:
   a. you give us written consent to do so; or
   b. We disclose for any exception provided in the law.
7) Attempt to keep our records complete and exact.
8) Advise you how and where to access your account (unless prohibited by law).
9) Advise you how to correct errors or make changes to your account.
10) Inspect our procedures to ensure your privacy.

## Collection and Sources of Information

We collect only the personal information needed to:
1) determine suitability for a product or service;
2) manage the product or service; and
3) advise customers about our products and services.

The information we collect comes from the following sources:
- **Submission** – In the application, you provide: your name; address; phone number; e-mail address; and other types of private information.
- **Quotes** – We collect information to determine:
  1) your eligibility for an insurance product; and
  2) your coverage cost.

The data we collect will vary with the type of insurance you seek.
- **Transactions** – We maintain records of all transactions with Our Group and our third party providers. Our records include:

1) your coverage choices;
2) premiums; billing; and payment records,
3) claims history; and
4) other data related to your account.

- **Claims** – We maintain records on any claims that are made under your policies. The investigation of a claim involves collection of a broad range of information. It also involves many issues, some of which do not directly involve you. We will share with you facts that we collect about your claim; unless prohibited by law. The process of claim investigation also involves advice; opinions; and comments from many people. These may include attorneys and experts. This will help us determine how best to handle your claim. To protect the legal and privileged aspects of opinions and advice, we will not disclose this information to you.
- **Credit and Financial Reports** – We may receive your credit history. This is to support information you provided during the submission and quote processes. This history will help to underwrite your coverage.

## Retention and Correction of Personal Information

We retain personal information only as long as required by law; or as required by our business methods. If we become aware that any information may be incorrect, we will make reasonable effort to correct it.

## Storage of Personal Information

Safeguards are in place to protect data and paper files containing personal information.

## Sharing/Disclosing of Personal Information

We do not share personal information with a third party outside of Our Group for marketing purposes. This is true unless such sharing is permitted by law. Information may be shared with a third party for necessary servicing of the product. It may also be disclosed for other business reasons as permitted by law.

We do not share personal data outside of Our Group for servicing or joint marketing reasons. We will only disclose such data when a contract containing non-disclosure language has been signed by us and the third party.

Unless a consumer consents, we do not disclose "consumer credit report" type information outside of Our Group. "Consumer credit report type information" means such things as: net worth; credit worthiness; hobbies (piloting, boating, etc.); solvency, etc.

We also do not disclose outside of Our Group personal information for use in marketing. We may share information within Our Group regarding our experience and dealings with the customer.

We may disclose private information about a customer as allowed or otherwise required by law. The law allows us to share a customer's financial data within Our Group for marketing purposes. The law does not allow customers to limit or prevent such disclosures.

We may also disclose personal information about you or your business to:

- your independent agent or broker;
- an independent claim adjuster; investigator; attorney; or expert;
- persons or groups that conduct scientific studies. This includes actuaries and accountants;
- a medical care facility or professional to verify coverage for a covered person;
- an insurance support group;
- another insurer if to prevent fraud;
- another insurer to properly underwrite a risk;
- insurance regulators;
- governmental authorities pursuant to law;
- an authority in response to a valid administrative or judicial order. This includes a warrant or subpoena;
- a party for the following purposes regarding a book of business: sale; transfer; merger; or consolidation. This applies whether the transaction is proposed or complete;

- a professional peer review group.  This includes reviewing the service or conduct of medical care facilities or personnel;
- a covered person for providing the status of a transaction; or
- any of the following: a lienholder; mortgagee; assignee; lessor; or other person of record having a legal interest in the policy.

**Policy for Personal Information Relating to Nonpublic Personal Health Information**

We do not disclose nonpublic personal health information about a customer; unless consent is obtained from that customer.  However, such consent shall not be prohibited, limited or sought for certain insurance functions.  This includes, but is not limited to:

    a.   claims administration;
    b.   fraud prevention;
    c.   underwriting; policy placement or issuance; loss control or auditing.

**Access to Your Information**

The following persons will have access to personal information we collect:
employees of Our Group and third party service providers.  Information will only be collected as is needed in transactions with you.

**Violation of the Privacy Policy**

Any person violating this Policy will be subject to discipline. This may include termination.


For questions regarding this privacy statement, please contact your broker.

XL 82 01 07 07

| | |
|---|---|
| **Endorsement No.: 1** | **Effective: September 09, 2011** |
| **Named Insured: Capitol Bancorp, Ltd.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU122778-11** | **Insurer: Indian Harbor Insurance Company** |

# CHANGE OF PREAMBLE ENDORSEMENT

The preamble to this Policy is amended to read in its entirety as follows:

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 24 03 03

**Endorsement No.: 2**                    **Effective: September 09, 2011**
**Named Insured: Capitol Bancorp, Ltd.**  **12:01 A.M. Standard Time**
**Policy No.: ELU122778-11**              **Insurer: Indian Harbor Insurance Company**

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 8. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 24 03 03                                                      Page 1 of 1

**Endorsement No.: 3**　　　　　　　　　　　　　　　　**Effective: September 09, 2011**
**Named Insured: Capitol Bancorp, Ltd.**　　　　　**12:01 A.M. Standard Time**
**Policy No.: ELU122778-11**　　　　　　　　　　　**Insurer: Indian Harbor Insurance Company**

# SERVICE OF PROCESS ENDORSEMENT

The Commissioner of Insurance of the State of Michigan is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

> The Corporation Company
> 30600 Telegraph Road
> Bingham Farms, MI 48025

as its agent in Michigan to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this policy remain unchanged.

XL-MISOP (02/07)

DO 83 01 01 00

| | |
|---|---|
| Endorsement No.: 4 | Effective: September 09, 2011 |
| Named Insured: Capitol Bancorp, Ltd. | 12:01 A.M. Standard Time |
| Policy No.: ELU122778-11 | Insurer: Indian Harbor Insurance Company |

# INSURED V. INSURED EXCLUSION

In consideration of the premium charged, Section III. Exclusions (G) is deleted and replaced with the following:

"(G)  by, on behalf of, or in the name or right of, the Company or any Insured Person, except and to the extent such Claim:

(1)  is brought derivatively by a security holder of the Company who, when such Claim is made and maintained is acting independently of, and without the active solicitation, assistance, participation or intervention of an Insured Person or the Company;

(2)  is in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy;

(3)  is an Employment Practices Claim;"

All other terms, conditions and limitations of this Policy remain unchanged.

DO 83 01 01 00

Stanford Decl. Ex. 2 – Page 24

DO 80 142 10 01

| | |
|---|---|
| **Endorsement No.: 5** | **Effective: September 09, 2011** |
| **Named Insured: Capitol Bancorp, Ltd.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU122778-11** | **Insurer: Indian Harbor Insurance Company** |

# AMEND SECTION IV ENDORSEMENT

In consideration of the premium charged, Section IV Limit of Liability, Indemnification and Retentions (F) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 25

DO 80 189 06 06

| | |
|---|---|
| Endorsement No.: 6 | Effective: September 09, 2011 |
| Named Insured: Capitol Bancorp, Ltd. | 12:01 A.M. Standard Time |
| Policy No.: ELU122778-11 | Insurer: Indian Harbor Insurance Company |

# AMEND DEFINITION OF LOSS ENDORSEMENT

In consideration of the premium charged, Section II Definitions (M) of the Policy is amended to read in its entirety as follows:

"(M)   'Loss' means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and Defense Expenses in excess of the Retention that the Insured is legally obligated to pay. Loss will not include:

  (1)   the multiplied portion of any damage award;

  (2)   fines, penalties or taxes imposed by law;

  (3)   wages; or

  (4)   matters which are uninsurable under the law pursuant to which this Policy is construed.

  NOTE:   With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law.  If, based on the written opinion of counsel for the Insured, punitive damages are insurable under applicable law, the Insurer will not dispute the written opinion of the counsel for the Insured."

All other terms, conditions and limitations of this Policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 26

DO 80 176 06 02

| | |
|---|---|
| Endorsement No.: 7 | Effective: September 09, 2011 |
| Named Insured: Capitol Bancorp, Ltd. | 12:01 A.M. Standard Time |
| Policy No.: ELU122778-11 | Insurer: Indian Harbor Insurance Company |

# AMEND DEFINITION OF SECURITIES CLAIM ENDORSEMENT

In consideration of the premium charged, Section II Definitions (Q) of the Policy is amended to read in its entirety as follows:

(Q)     'Securities Claim' means a Claim, other than an administrative or regulatory proceeding against or investigation of a Company, made against any Insured:

(1)     for a violation of any federal, state, local regulation, statute or rule regulating securities, including but not limited to the purchase or sale of, or offer to purchase or sell, securities which is:

(a)     brought by any person or entity based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the purchase or sale of, or offer to purchase or sell, securities of the Company; or

(b)     brought by a security holder of a Company with respect to such security holder's interest in securities of such Company; or

(2)     brought derivatively on behalf of the Company by a security holder of such Company.

Notwithstanding the foregoing, the term 'Securities Claim' shall include an administrative or regulatory proceeding against a Company, but only if and only during the time that such proceeding is also commenced and continuously maintained against an Insured Person.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 176 06 02

Page 1 of 1

DO 83 59 09 02

**Endorsement No.: 8**
**Named Insured: Capitol Bancorp, Ltd.**
**Policy No.: ELU122778-11**

**Effective: September 09, 2011**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# PRIOR ACTS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty, Wrongful Act, Company Wrongful Act or Employment Wrongful Act committed or allegedly committed prior to September 09, 2010.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 83 23 09 00

| | |
|---|---|
| Endorsement No.: 9 | Effective: September 09, 2011 |
| Named Insured: Capitol Bancorp, Ltd. | 12:01 A.M. Standard Time |
| Policy No.: ELU122778-11 | Insurer: Indian Harbor Insurance Company |

# REGULATORY EXCLUSION

In consideration of the premium charged:

(1)    The term "Regulator" shall mean:

        (a)    the Federal Deposit Insurance Corporation, the Federal Reserve Board, the Comptroller of the Currency, the Office of Thrift Supervision, the Resolution Trust Corporation, the Federal Home Loan Bank Board and the Federal Housing Finance Board; and

        (b)    any similar federal, state or local depository insurance organization or regulatory or supervisory agency or authority; and

        (c)    all affiliates of and successors and predecessors to the foregoing, including but not limited to any such entity subsequently created by any federal, state or local statute, rule or regulation.

(2)    The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured by or on behalf of, or in the right of, or at the behest of, or with the participation of:

        (a)    any Regulator, in any capacity whatsoever, regardless of in whose name or for whose benefit the Claim is made; or

        (b)    any person or entity against whom any Regulator, in any capacity whatsoever, has asserted any claim or demand of whatever nature.

(3)    Paragraph (2) above shall apply without regard to the capacity or capacities in which a Regulator acts or purports to act, including but not limited to its corporate capacity, its supervisory capacity and its capacity as conservator, receiver, trustee, liquidator or rehabilitator.

All other terms, conditions and limitations of this Policy remain unchanged.

DO 80 500 11 08

| | |
|---|---|
| Endorsement No.: 10 | Effective: September 09, 2011 |
| Named Insured: Capitol Bancorp, Ltd. | 12:01 A.M. Standard Time |
| Policy No.: ELU122778-11 | Insurer: Indian Harbor Insurance Company |

# PENSION AND WELFARE BENEFIT PLAN FIDUCIARY LIABILITY ENDORSEMENT

In consideration of the premium charged:

(1)     In addition to the coverage afforded pursuant to Insuring Agreements (A), (B) and (C), but subject to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations and the provisions below, the Insurer shall pay on behalf of the Insureds Loss resulting from a Claim first made against the Insureds during the Policy Period, or, if applicable, the Optional Extension Period, for a Fiduciary Wrongful Act.

(2)     Solely for the purposes of this endorsement, the following terms shall have the meanings set forth below:

    (a)     "Administration" means:

        (i)     handling records in connection with Employee Benefits;

        (ii)     effecting enrollment, termination or cancellation of employees under an Employee Benefits program;

        (iii)     giving counsel to employees with respect to Employee Benefits; or

        (iv)     interpreting Employee Benefits.

    (b)     "Employee Benefits" means any Plan, and any workers' compensation insurance, unemployment insurance, Social Security or disability benefits for employees of the Company.

    (c)     "Fiduciary Wrongful Act" means any actual or alleged:

        (i)     breach of duties, responsibilities or obligations imposed upon fiduciaries of any Plan by the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or the common law or statutory law of any jurisdiction governing such Plan;

        (ii)     negligent act, error or omission by an Insured in the Administration of Employee Benefits; or

        (iii)     any other matter claimed against an Insured solely by reason of their service as a fiduciary of any Plan.

    (d)     "Plan" means:

        (i)     any Pension Benefit Plan which is operated solely by a Sponsor Organization or jointly by a Sponsor Organization and a labor organization solely for the benefit of such Sponsor Organization's directors, officers, trustees, governors, management committee members, managers, members of the Board of Managers, general partners, in-house general counsel or employees located anywhere in the world and which existed on the Inception Date of this Policy or of any Policy of which this Policy is a renewal;

        (ii)     any Welfare Benefit Plan which was, is now, or becomes sponsored by any Sponsor Organization;

Stanford Decl. Ex. 2 – Page 30

(iii)    any Pension Benefit Plan, or any trust established to hold the assets of any such Pension Benefit Plan, created during the Policy Period by any Sponsor Organization or by any interest owned or controlled by such Sponsor Organization for the employees thereof, but only if the Insured provides the Insurer with written notice of the creation of such Pension Benefit Plan within ninety (90) days of the effective date of such Pension Benefit Plan; and

(iv)    any Pension Benefit Plan, or any trust established to hold the assets of any such Pension Benefit Plan, of any entity acquired during the Policy Period through the merger, consolidation or otherwise by any Sponsor Organization or by any interest owned or controlled by such Sponsor Organization, but only if:

(A)    the Insured provides the Insurer such additional information with respect thereto as the Insurer may reasonably require;

(B)    the Insured provides the Insurer written notice of such acquisition as soon as practicable after the effective date thereof; and

(C)    the Insurer specifically agrees by written endorsement to provide coverage with respect to such Plan and the Insured has accepted any additional terms, conditions and limitations of coverage, and agrees to pay any additional premium that the Insurer in its sole discretion, shall deem appropriate.

Plan shall not include any multi-employer plan.

(e)    "Pension Benefit Plan" means any employee pension benefit plan, as such term is defined in ERISA.

(f)    "Sponsor Organization" means the Company while acting in its capacity as a sponsor of a Plan for the benefit of its employees.

(g)    "Welfare Benefit Plan" means any employee welfare benefit plan, as such term is defined in ERISA.

(3)    Solely for the purposes of the coverage provided by this endorsement:

(a)    The term "Claim," as defined in Section II Definitions (C) of the Policy, is amended to include:

(i)    a written notice of the commencement of an investigation by the Department of Labor or the Pension Benefit Guaranty Corporation; or

(ii)    a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

against an Insured for a Fiduciary Wrongful Act.

(b)    The term "Insured," as defined in Section II Definitions (I) of the Policy, is amended to include the Plan and the Sponsor Organization.

(c)    The term "Insured Person," as defined in Section II Definitions (J) of the Policy, is amended to include any director, officer, trustee, partner or employee of the Plan or of the Sponsor Organization while acting in his or her capacity as a fiduciary of the Plan.

(d)    The term "Loss," as defined in Section II Definitions (M) of the Policy:

(i)    will not include:

(A)    fines, penalties or taxes imposed by law, except that Loss may include civil penalties of up to five percent (5%) imposed pursuant to Section 502(i) of ERISA for inadvertent violation of Section 406 of ERISA, and civil penalties of up to

twenty percent (20%) of any settlement or judgment imposed pursuant to Section 502(l) of ERISA for breach of fiduciary duty; or

(B) benefits due or to become due under the terms of any Plan, unless and then only to the extent that recovery for such benefits is based on a Fiduciary Wrongful Act and is payable as the personal obligation of an Insured who is a natural person; provided that Loss shall include Defense Expenses with respect to any Claim seeking benefits due or to become due under the terms of any Plan.

(ii) will include a monetary award in, or fund for settling, any Claim against an Insured for a Fiduciary Wrongful Act to the extent that such Claim alleges a loss to a Plan or loss to the actual account or accounts of one or more participants in a Plan by reason of a change in the value of investments held by such Plan, including but not limited to securities issued by a Sponsor Organization, whether or not the amounts sought in such Claim have been characterized by plaintiffs as, or held by a court to be, "benefits."

(4) The term "Interrelated Wrongful Act," as defined in Section II Definitions (K) of the Policy, shall include any Fiduciary Wrongful Act based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions or events.

(5) The preamble of Section III Exclusions is amended to read in its entirety as follows:

"The Insurer shall not be liable to make any payment for Loss in connection with any Claim:"

(6) No coverage will be available under this endorsement for Loss in connection with Claims for Fiduciary Wrongful Acts:

(a) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Fiduciary Wrongful Act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to September 09, 2010;

(b) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Fiduciary Wrongful Act which, before the effective date of this endorsement, was the subject of any notice given under any other management liability insurance policy, directors and officers liability policy, pension and welfare benefit plan fiduciary liability insurance policy or similar policy;

(c) arising out of any actual or alleged liability of the Company under any express contract or agreement, other than an Agreement and Declaration of Trust or similar agreement creating or establishing a Plan.   With respect to this subparagraph (c), an "express contract or agreement" is defined as an actual agreement of the parties, the terms of which are openly set forth or declared at the time of making in clear or distinct language.  This subparagraph (c) will not apply to the extent that an Insured would have been liable in the absence of the express contract or agreement;

(d) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged failure by any Insured to comply with any law, rule or regulation concerning workers' compensation insurance, unemployment insurance, Social Security or disability benefits, whether or not such failure to comply is willful;

(e) for the failure to collect contributions owed to any Plan from any employer unless such failure is due to the negligence of an Insured, or for the return to any employer of any contributions if such amounts are or could be chargeable to a Plan; provided this subparagraph (e) shall not apply to Defense Expenses, subject to the maximum aggregate Limit of Liability;

(f) made by or on behalf of a fidelity insurer against a natural person whose conduct has resulted in a Loss which has been paid under a fidelity bond; or

DO 80 500 11 08       Page 3 of 5

(g)    based upon, arising out of, directly or indirectly resulting from any discrimination, retaliation or wrongful termination of employment; provided that this subparagraph (g) will not apply to Claims asserted under Section 510 of ERISA.

(7)    Section III Exclusions (C) of the Policy shall not apply to Claims for Fiduciary Wrongful Acts.

(8)    For the purposes of Section VI General Conditions (A) and (F) of the Policy, the term "Wrongful Act" shall be deemed to include any Fiduciary Wrongful Act.

(9)    Section VI General Conditions (D) of the Policy is amended to read in its entirety as follows:

"(D)    MERGERS AND ACQUISITIONS (CHANGES IN EXPOSURE OR CONTROL)

(1)    If during the Policy Period, the Company acquires any assets, acquires a Subsidiary, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any Loss involving a Claim for a Wrongful Act, Company Wrongful Act, Employment Practices Wrongful Act or Fiduciary Wrongful Act (other than a Fiduciary Wrongful Act in connection with any Pension Benefit Plan acquired) occurring after the consummation of the transaction.

(2)    If, however, by reason of the transaction (or series of transactions) described in (D)(1) above, the entity, assets, Subsidiary or liabilities so acquired or so assumed, exceed thirty five percent (35%) of the total assets or liabilities of the Company, as represented in the Company's most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any Loss involving a Claim for a Wrongful Act, Company Wrongful Act, Employment Practices Wrongful Act or Fiduciary Wrongful Act (other than a Fiduciary Wrongful Act in connection with any Pension Benefit Plan acquired) that occurred after the transaction has been consummated.  Coverage beyond the ninety (90) day period will be provided only if:

(a)    the Insurer receives written notice containing full details of the transaction(s); and

(b)    the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate.

(3)    With respect to the acquisition, assumption, merger, consolidation or otherwise of any entity, asset, Subsidiary or liability as described in (D)(1) and (2) above, there will be no coverage available under this Policy for Claims made against the acquired, assumed, merged, or consolidated entity, asset, Subsidiary, liability, Insured Person or Plan for a Wrongful Act, Company Wrongful Act, Employment Practices Wrongful Act or Fiduciary Wrongful Act committed any time during which such entity, asset, liability or Subsidiary is not an Insured.

(4)    If during the Policy Period any entity ceases to be a Subsidiary, the coverage provided under this Policy shall continue to apply to the Insured Persons who, because of their service with such Subsidiary, were covered under this Policy but only with respect to a Claim for a Wrongful Act, Company Wrongful Act, Employment Practices Wrongful Act or Fiduciary Wrongful Act that occurred or allegedly occurred prior to the time such Subsidiary ceased to be a Subsidiary of the Company.

(5)    If, during the Policy Period, there is a Change In Control, the coverage provided under this Policy shall continue to apply but only with respect to a Claim against an Insured for a Wrongful Act, Company Wrongful Act, Employment Practices Wrongful Act or Fiduciary Wrongful Act committed or allegedly committed up to the time of the Change In Control; and

(a)  coverage will cease with respect to any Claim for a Wrongful Act, Company Wrongful Act, Employment Practices Wrongful Act, or Fiduciary Wrongful Act committed subsequent to the Change In Control; and

(b)  the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a Change In Control."

(10)  If during the Policy Period, the Company acquires any assets, acquires a Subsidiary, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, no coverage will be available under this Policy for any Claim for any Fiduciary Wrongful Act based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any Pension Benefit Plan of such asset, Subsidiary, entity or liability acquired or assumed, subject to paragraph (2)(d)(iv) above.

(11)  It is agreed that, in the event an Insured breaches a fiduciary obligation under ERISA, the Insurer has the right of recourse against any such Insured for any amount paid by the Insurer as a result of such breach of fiduciary duty, but the Insurer shall have no such right of recourse if the Policy has been purchased by the fiduciary or by an employer or employee organization.

(12)  The Insurer's maximum aggregate limit of liability under this Policy for all Claims for Fiduciary Wrongful Acts will be $5,000,000, which amount is a part of, and not in addition to, the Insurer's maximum aggregate Limit of Liability set forth in ITEM 3 of the Declarations.

(13)  The Insurer shall pay the amount of Loss for any Claim for Fiduciary Wrongful Acts in excess of a retention of $150,000 for each such Claim, which amount will be deemed to be the retention set forth in Item 4 of the Declarations with respect to such Claim.

| | |
|---|---|
| Endorsement No.: 11 | Effective: September 09, 2011 |
| Named Insured: Capitol Bancorp, Ltd. | 12:01 A.M. Standard Time |
| Policy No.: ELU122778-11 | Insurer: Indian Harbor Insurance Company |

# BANKERS PROFESSIONAL LIABILITY, WITH SUBLIMIT AND SPLIT RETENTION

In consideration of an additional premium of $0.00 charged:

(1)     In addition to the coverage afforded pursuant to Section I. INSURING AGREEMENTS (A), (B) and (C), but subject to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations and the provisions below, the Insurer will pay on behalf of the Insureds Loss resulting from Claims first made against the Insureds during the Policy Period or, if applicable, the Optional Extension Period for a Wrongful Act committed by an Insured in the rendering of, or failure to render, Professional Services (a "Professional Services Wrongful Act").

(2)     Solely for the purposes of the coverage provided by this endorsement:

(a)     The term "Insured Person," as defined in Section II. DEFINITIONS (J), is amended to include employees of the Company, but only while acting within the scope of their employment.

(b)     The term "Wrongful Act," as defined in Section II. DEFINITIONS (S), is amended to include any Professional Services Wrongful Act.

(3)     Solely for the purposes of this endorsement, the term "Professional Services" will mean only those services performed or required to be performed by the Company for or on behalf of a customer of the Company pursuant to an agreement between such customer and the Company for a fee, commission or other monetary consideration or other remuneration which inures to the benefit of the Company; provided, however, that Professional Services will not include:

(a)     medical or health care services, real estate appraisal, architectural or construction management services, the practice of law or the rendering of legal services, or

(b)     services performed by any entity as to which the Company shall have acquired ownership or control as security for a loan or other extension of credit.

(4)     No coverage will be available under this endorsement for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

(a)     any actual or alleged liability of the Company under any contract or agreement between contracting parties, either oral or in writing, including Claims made by borrowers, guarantors or applicants relating to an extension of credit; provided, however, that this exclusion will not apply to Claims made by depositors arising out of any depository relationship;

(b)     the failure to collect contributions owed to an employee benefit plan or other employee program (unless such failure is the result of negligence of the directors, officers or employees of the Company) or for the return of any contributions to an employer if such amounts are or could be chargeable to the employee benefit plan or other employee program;

(c)     benefits paid or payable to a participant or beneficiary of an employee benefit plan or other employee program if such benefits may lawfully be paid from the funds of the employee benefit plan or other employee program;

Stanford Decl. Ex. 2 – Page 35

(d) bankruptcy of or suspension of payment by any bank or broker or dealer in securities or commodities;

(e) safe deposit or safe keeping operations of the Company;

(f) any debt unpaid or obligation unfulfilled by reason of the Company's insolvency;

(g) any actual or alleged bodily injury, sickness, disease or death of any person, assault, battery, mental anguish, emotional distress or loss of consortium, any ethnic, sexual, racial, religious, age or other unlawful discrimination or harassment of any nature, or any wrongful termination;

(h) any actual or alleged violation of or failure to comply with federal, state or local laws or regulations relating to extensions or denials of credit or consumer compliance requirements, including but not limited to truth-in-lending, usury laws, equal opportunity credit, deceptive trade practices, fair credit reporting laws, community reinvestment laws and advertising laws; or

(i) any federal, state or local tax laws or regulations.

(5) The Insurer's maximum aggregate limit of liability under this Policy for all Claims for Professional Services Wrongful Acts will be $5,000,000, which amount will be part of, and not in addition to, the Insurer's maximum aggregate Limit of Liability as set forth in Item 3 of the Declarations, which maximum aggregate Limit of Liability is applicable to all Loss from all Claims for which this Policy provides coverage.

(6) With respect to any Claim for any Professional Services Wrongful Act, the Insurer will be liable to pay Loss only in excess of:

(a) $350,000, if such Claim is only against any entity or entities included within the definition of "Company" or any Insured Persons thereof and, at the time such Claim is first made or deemed made, the assets of each such entity do not exceed $200,000,000; or

(b) $150,000, if such Claim is, in whole or in part, against any entity included within the definition of "Company" or any Insured Persons thereof and, at the time such Claim is first made or deemed made, the assets of such entity exceed $200,000,000.

Item 4 of the Declarations will be deemed to have been amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 36

DO 80 67 05 02

**Endorsement No.: 12**
**Named Insured: Capitol Bancorp, Ltd.**
**Policy No.: ELU122778-11**

**Effective: September 09, 2011**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# ADD EMPLOYMENT PRACTICES ENTITY COVERAGE

In consideration of the premium charged:

(1)     In addition to the coverage afforded pursuant to Insuring Agreements (A), (B) and (C), but still subject to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations applicable to all Loss resulting from all Claims, the Insurer will pay on behalf of the Company Loss from Claims first made against the Company during the Policy Period for Employment Practices Wrongful Acts.

(2)     The term "Insured Person" also includes any past or present employee of the Company, but only if and to the extent that a Claim is made against such employee for an Employment Practices Wrongful Act.

(3)     The term "Loss" also includes amounts, including Defense Expenses, which the Company is obligated to pay as a result of a Claim for an Employment Practices Wrongful Act, provided, that such amounts, including Defense Expenses, will be Loss only to the extent that they are in excess of a retention of $150,000 each Claim, which amount will be deemed to be the retention set forth in Item 4 of the Declarations with respect to such Claim.

(4)     Any provision of this Policy stating or implying that coverage is provided only for Loss from Claims against one or more of the Insured Persons will be deemed to have been amended to the extent necessary to effect the purposes of this endorsement.

(5)     The Insurer will have no duty under this endorsement to defend any Claim for an Employment Practices Wrongful Act.  It shall be the duty of the Company and the Insured Persons to defend such Claims, subject to all of the other terms, conditions and limitations of the Policy, including but not limited to Section IV. Limit of Liability, Indemnification and Retentions.

(6)     Nothing in this endorsement is intended, nor shall it be construed, to afford coverage for Loss in connection with any Claim against the Company except as expressly set forth in this endorsement, or for Loss in connection with any Claim against any employee of the Company who, but for this endorsement, would not have been a Insured Person unless, and then only to the extent that, such Claim is for an Employment Practices Wrongful Act by such employee.

(7)     No coverage shall be available under this endorsement for any Claim arising out of any actual or alleged liability of the Company under any express contract or agreement.  With respect to this paragraph (7), an "express contract or agreement" is defined as an actual agreement of the parties, the terms of which are openly set forth or declared at the time of making in clear or distinct language.  This paragraph (7) will not apply to the extent that an Insured would have been liable in the absence of such express contract or agreement.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 11447 11 10

| | |
|---|---|
| Endorsement No.: 13 | Effective: September 09, 2011 |
| Named Insured: Capitol Bancorp, Ltd. | 12:01 A.M. Standard Time |
| Policy No.: ELU122778-11 | Insurer: Indian Harbor Insurance Company |

# LENDER LIABILITY, WITH SUBLIMIT AND SPLIT RETENTION

In consideration of the premium charged:

(1)     In addition to the coverage afforded pursuant to Section I. INSURING AGREEMENTS (C), but subject to the Insurer's maximum aggregate Limit of Liability set forth in Item 3 of the Declarations and the provisions below, the Insurer will pay on behalf of the Company Loss resulting from a Claim first made against the Company during the Policy Period or, if applicable, the Optional Extension Period for a Wrongful Lending Act.

(2)     Solely for the purposes of the coverage provided by this endorsement:

(a)     The term "Interrelated Wrongful Acts," as defined in Section II. DEFINITIONS (K), will include any Wrongful Lending Acts which have as a common nexus with any other Wrongful Act any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

(b)     The term "Loss," as defined in Section II. DEFINITIONS (M), will not include any unpaid, unrecoverable or outstanding credit extended to a Borrower.

(c)     The term "Wrongful Act," as defined in Section II. DEFINITIONS (S), is amended to include any Wrongful Lending Act.

(3)     Solely for the purposes of the coverage provided by this endorsement, the following terms will have the meanings set forth below:

(a)     "Borrower" means any person or entity which is not directly or indirectly affiliated with the Company in any respect and to which an extension of credit, or a refusal to extend credit, was made or negotiated.

(b)     "Consumer Law" means any federal, state or local law or regulation relating to the extension or denial of consumer credit, including but not limited to laws or regulations relating to truth-in-lending, equal credit opportunity, privacy, fair housing, consumer credit practices, usury, flood insurance, real estate settlement procedures, fair credit billing and fair credit reporting.

(c)     "Controlling Direct or Beneficial Interest" of an entity means: (i) the ownership, control or power to vote twenty-five percent (25%) or more of any class of voting securities of such entity; (ii) the control in any manner of the election of a majority of the directors of such entity; or (iii) the power to exercise a controlling influence over the management or policies of such entity.

(d)     "Wrongful Lending Act" means any actual or alleged act, error, omission, misstatement, misleading statement or neglect or breach of duty by the Company in connection with an extension of credit or refused extension of credit to a Borrower.

(4)     No coverage will be available under this endorsement for Claims for Wrongful Lending Acts brought by any person or entity other than a Borrower, or for Claims for Wrongful Lending Acts based upon, arising from, directly or indirectly resulting from, in consequence of or in any way involving:

(a)     any conflict of interest or intentional noncompliance with any statute or regulation by an Insured;

Stanford Decl. Ex. 2 – Page 38

(b)    any failure to effect or maintain any insurance or bond;

(c)    any bankruptcy of, or suspension of payment by, any financial institution;

(d)    the insolvency or bankruptcy of any entity included within the definition of "Company";

(e)    any extension of credit to any Insured Person or to any entity in which any Insured Person or group of Insured Persons has a Controlling Direct or Beneficial Interest;

(f)    any extension of credit which was, or would have been at the time of its making, in excess of the legal lending limit of the Company or any related entity which extended the credit;

(g)    any lending or financial advisory services where such services are provided for a fee and are not part of the normal process of extending credit to a Borrower;

(h)    any actual or alleged violation of any Consumer Law;

(i)    any fact, circumstance, situation, transaction, event or Wrongful Lending Act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought or commenced prior to September 09, 2010; or

(j)    any fact, circumstance, situation, transaction, event or Wrongful Lending Act which, before the Inception Date of this Policy, was the subject of any notice given under any other policy of management liability, directors' and officers' liability or other similar insurance.

No fact pertaining to, or knowledge possessed by, any Insured other than the Chairman, Chief Executive Officer, Chief Financial Officer, Chief Operating Officer and General Counsel of the Company will be imputed to the Company for the purposes of determining the availability of coverage under this endorsement for or with respect to Claims for Wrongful Lending Acts.

(5)    The Insurer's maximum aggregate limit of liability under this Policy for all Claims for Wrongful Lending Acts will be $5,000,000, which amount will be part of, and not in addition to, the Insurer's maximum aggregate Limit of Liability as set forth in Item 3 of the Declarations, which maximum aggregate Limit of Liability is applicable to all Loss from all Claims for which this Policy provides coverage.

(6)    With respect to any Claim for any Wrongful Lending Act, the Insurer will be liable to pay Loss only in excess of:

(a)    $350,000, if such Claim is only against any entity or entities included within the definition of "Company" the assets of each of which, at the time such Claim is first made or deemed made, do not exceed $200,000,000; or

(b)    $150,000, if such Claim is, in whole or in part, against any entity included within the definition of "Company" the assets of which, at the time such Claim is first made or deemed made, exceed $200,000,000.

Item 4 of the Declarations will be deemed to have been amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 12 04 00

**Endorsement No.: 14**            **Effective: September 09, 2011**
**Named Insured: Capitol Bancorp, Ltd.**    **12:01 A.M. Standard Time**
**Policy No.: ELU122778-11**           **Insurer: Indian Harbor Insurance Company**


# FULLY-EARNED PREMIUM ENDORSEMENT


In consideration of the premium charged, the entire premium for this Policy, as set forth in ITEM 8 of the Declarations, shall be deemed to be fully earned as of the Policy Inception Date set forth in ITEM 2 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 40

DO 80 16 05 00

**Endorsement No.: 15**
**Named Insured: Capitol Bancorp, Ltd.**
**Policy No.: ELU122778-11**

**Effective: September 09, 2011**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# PRIORITY OF PAYMENTS

In consideration of the premium charged, it is understood and agreed that if Loss, including Defense Expenses, shall be payable under more than one of the INSURING AGREEMENTS, then the Insurer shall, to the maximum extent practicable and subject at all times to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, pay such Loss as follows:

    (1)    first, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under INSURING AGREEMENT (A);

    (2)    second, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Company under INSURING AGREEMENT (B); and

    (3)    third, the Insurer shall make such other payments which the Insurer may be liable to make under INSURING AGREEMENT (C) or otherwise.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 48 07 00

| | |
|---|---|
| Endorsement No.: 16 | Effective: September 09, 2011 |
| Named Insured: Capitol Bancorp, Ltd. | 12:01 A.M. Standard Time |
| Policy No.: ELU122778-11 | Insurer: Indian Harbor Insurance Company |

# AMEND DEFINITION OF COMPANY

In consideration of the premium charged, Section II (D), Definition of "Company," is amended to include:

1CB Real Estate Holdings, LLC

1st Commerce Bank

322 South Street, LLC

1435 W Grand River, LLC

AACB Real Estate Holdings, LLC

ACB Real Estate Holdings, LLC

ACB RE Holdings I, LLC

ABAz Real Estate Holdings, LLC

ACB RE Holdings I, LLC

AMC Real Estate Holdings, LLC

Amera Mortagage

BAH Real Estate Holdings, LLC fka Lapeer and Silverbell Property, LLC

BAIA ACquisition Company, LLC

Bank of Feather River

Bank of Fort Bend

Bank of Las Colinas

Bank of Las Vegas

Bank of Maumee

Bank of Michigan

Bank of the Northwest

Bank of San Francisco

Bank of Pittsburg

Bank of Tucson

BCB Number One, LLC

BCB Real Estate Holdings, LLC

Black Mountain Community Bank

BMCB Real Estate Holdings, LLC

BOB-WA Real Estate Holdings, LLC

Bolcre Holdings, LLC

BOLV-BMCB RE Holdings I, LLC

BOLV-DCB RE Holdings I, LLC

Bolv RE Holdings, LLC

Bolv Real Estate Holdings I, LLC

BoLV-RRCB RE Holdings I, LLC

BOT Real Estate Holdings, LLC

BOTNW Real Estate Holdings. LLC

BOT-WA Real Estate Holdings, LLC

BOV Real Estate Holdings, LLC

CAB Real Estate Holdings, LLC

DO 80 48 07 00

Page 1 of 5

Capitol Bancorp Leasing
Capitol Bancorp, Limited
Capitol Bancorp Capitol Trust 4
Capitol Bancorp Colorado, LTD
Capitol Bancorp Colorado, Ltd II
Capitol Bancorp Colorado, Ltd III
Capitol Bancorp Trust X
Capital Bank of Columbus
Capitol Bean Counter, LLC
Capitol Capitol, LLC
Capitol Development Bancorp Limited III
Capitol Development Bancorp Limited IV
Capitol Development Bancorp Limited V
Capitol Development Bancorp Limited VI
Capitol Development Bancorp Limited VII
Capitol National Bank
Capitol Statutory Trust III
Capitol Trust I
Capitol Trust II
Capitol Trust VI
Capitol Trust VII
Capitol Trust VIII
Capitol Trust IX
Capitol Trust XI
Capitol Trust XII
Capitol Wealth Asset Management, LLC
Capitol Wealth Insurance Agency, Inc.
CB-Lincoln Real Estate Holdings, LLC  (Nebraska)
CBL RE Holdings I, LLC
CBL RE Holdings II, LLC
CBL RE Holdings III, LLC
CBL Real Estate, LLC
CBL Real Estate Holdings, LLC
CBR Real Estate Holdings, LLC
CBSWF Real Estate Holdings, LLC
CCB RE Holdings I, LLC
CCB Real Estate Holdings, LLC
CG Holdings, LLC
Central Arizona Bank
Citizen's Business Bank
Clemson Holdings, LLC
CNB Holdings, LLC
CNB RE Holdings I, LLC
CNB RE Holdings II, LLC
CNB RE Holdings III, LLC
CNB RE Holdings IV, LLC
CNB RE Holdings V, LLC

DO 80 48 07 00

CNB Real Estate Holdings, LLC
Community Bank of Rowan
DCB Real Estate Holdings, LLC
DECB Real Estate Holdings, LLC
Dix-Toledo, LLC
East Valley Bank
ECB RE Holdings, LLC
ECB Real Estate Holdings, LLC
Evansville Commerce Bank
EVCB Real Estate Holdings, LLC
FCSB RE Holdings I, LLC
FCSB Real Estate Holdings, LLC
Financial Center Corporation
First Carolina State Bank
Flushing Holdings, LLC
Fort Collins Commerce bank
Fort Myers Holdings, LLC
GCB Holdings I, LLC
GCK RE Holdings I, LLC
GHB RE Holdings I, LLC
GHB Real Estate Holdings, LLC
Goshen Holdings, LLC
Goshen Real Estate Holdings, LLC
Harris Parking Holdings LLC
 Harris Parkway Holdings, LLC fka Anderson Holdings,LLC
HDB Real Estate Holdings, LLC
High Desert Bank
Horsetooth Real Estate Holdings, LLC
Indiana Community Bank
KCB RE Holdings, I, LLC
KCB Real Estate Holdings, LLC
Lapeer & Silverbell, LLC
Lapeer Property Holdings, LLC
Larimer Bank of Commerce
Loveland Bank of Commerce
Lovers Lane Holdings, LLC
MaCB RE Holdings I, LLC
MaCB RE Holdings II, LLC
MaCB RE Holdings III, LLC
MaCB Real Estate Holdings, LLC
MB Real Estate Holdings, LLC
MCB Real Estate, LLC
MiCB-PBT Holdings I, LLC
MiCB Real Estate Holdings, LLC
MiCB-AACB RE Holdings I, LLC
MiCB-AACB RE Holdings II, LLC

MiCB-AACB RE Holdings III, LLC
MiCB AACB RE Holdings IV, LLC
MiCB AACB RE Holdings V,LLC
MiCB AACB RE Holdings VI, LLC
MiCB-BCB RE Holdings I, LLC
MiCB BCB RE Holdings II, LLC
MiCB BCB RE Holdings III, LLC
MiCB-DCB RE Holdings I, LLC
MiCB-DCB RE Holdings II, LLC
MiCB-DCB RE Holdings III, LLC
MiCB DCB RE Holdings IV, LLC
MiCB DCB RE Holdings V, LLC
MiCB DCB RE Holdings VI, LLC
MiCB DCB RE Holdings VII, LLC
MiCB-GBH RE Holdings I, LLC
MiCB-GHB RE Holdings I, LLC
MiCB-GHB RE Holdings II, LLC
MICB-GHB RE Holdings III, LLC
MiCB-GHB RE Holdings IV, LLC
MiCB-KCB RE Holdings, LLC
MiCB-KCB RE Holdings II, LLC
MiCB-MaCB RE Holdings I, LLC
MiCB-MaCB RE Holdings II, LLC
MiCB-MaCB RE Holdings III, LLC
MiCB-MaCB RE Holdings IV, LLC
MiCB-MuCB RE Holdings I, LLC
MiCB-MuCB RE Holdings II, LLC
MiCB MuCB RE Holdings III, LLC
MiCB MuCB RE Holdings IV, LLC
MiCB-OCB RE Holdings I, LLC
MiCB-OCB RE Holdings II, LLC
MiCB OCB RE Holdings III, LLC
MiCB PCB RE Holdings I, LLC
MiCB PCB RE Holdings II, LLC
MiCB PCB RE Holdings III, LLC
MiCB-PBT Holdings I, LLC
Michigan Commerce Bank
Mountain View Bank of Commerce
MuCB RE Holdings I, LLC
MuCB RE Holdings, II, LLC
MuCB RE Holdings, III, LLC
MUCB Real Estate Holdings, LLC
NCB Real Estate Holdings, LLC
Neptune Drive, LLC
OCB RE Holdings, I, LLC
OCB RE Holdings II,LLC
OCB Real Estate Holdings, LLC

PBT RE Holdings I, LLC
PBT RE Holdings II, LLC
PBT RE Holdings III, LLC
PBT Real Estate Holdings, LLC
PCB RE Holdings I, LLC
PCB Real Estate Holdings, LLC
Pisgah Community Bank
PiCB Real Estate Holdings, LLC
PSB Real Estate Holdings, LLC
RRCB RE Holdings II, LLC
RRCB  Real Estate Holdings, LLC
SACB Real Estate Holdings, LLC
SB Real Estate Holdings, LLC
SBAlb Real Estate Holdings, LLC
SBATL Real Estate Holdings, LLC
SBAz CCB RE Holdings I, LLC
SBAZ RE Holdings I, LLC
SBAZ RE Holdings II, LLC
SBAZ RE Holdings III, LLC
SBAZ Real Estate Holdings I, LLC
SBAZ Real Estate Holdings, LLC
SBKC Real Estate Holdings, LLC
SBSD Real Estate Holdings, LLC
SCB Real Estate Holdings, LLC
SR Holdings, LLC
Scottsdale Holdings, LLC
Southern Arizona Community Bank
Summit Bank of Kansas City
Sunrise Bank of Albuquerque
SBAlb Real Estate Holdings, LLC
Sunrise Bank of Arizona
Sunrise Bank - CA
Sunrise Bank GA
Sunrise Bank of Norman
Valley First Community  Bank
VFCB Real Estate Holdings, LLC
YCB Real Estate Holdings, LLC

All other terms, conditions and limitations of this Policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 46

**Manuscript 7404 08 07**

| | |
|---|---|
| **Endorsement No.: 17** | **Effective: September 09, 2011** |
| **Named Insured: Capitol Bancorp, Ltd.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU122778-11** | **Insurer: Indian Harbor Insurance Company** |

# GUARANTEE TO PROVIDE A QUOTATION ENDORSEMENT

In consideration of the premium charge, if, upon the expiration of this Policy and the election of the Extended Reporting Period by the Insured, the Insured requests of the Insurer to provide a quotation of coverage for a subsequent policy and the Insured provides the Insurer with any information which the Insurer may request, the Insurer will provide the Insured with a quotation of for such coverage.  Such quotation shall contain such terms, conditions, and limitations of coverage and require such premium for such coverage as the Insurer, in its sole discretion, may require.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 47

DO 80 301 12 04

**Endorsement No.: 18**  **Effective: September 09, 2011**
**Named Insured: Capitol Bancorp, Ltd.**  **12:01 A.M. Standard Time**
**Policy No.: ELU122778-11**  **Insurer: Indian Harbor Insurance Company**

# AMEND INSURED PERSON DEFINITION ENDORSEMENT

In consideration of the premium charged, Section II Definition (J)(2) of the Policy is amended to read in its entirety as follows:

>    (2)    any past, present or future employee of the Company;

All other terms, conditions and limitations of this Policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 48

DO 80 118 05 01

| | |
|---|---|
| Endorsement No.: 19 | Effective: September 09, 2011 |
| Named Insured: Capitol Bancorp, Ltd. | 12:01 A.M. Standard Time |
| Policy No.: ELU122778-11 | Insurer: Indian Harbor Insurance Company |

# AMEND GENERAL CONDITIONS (A)(2) ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (A)(2) of the Policy is amended to read in its entirety as follows:

(2)     If, during the Policy Period, or if applicable the Optional Extension Period, the Insured first becomes aware of a specific Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act and if, during the Policy Period, or if applicable the Optional Extension Period, the Insured:

(a)     provides the Insurer with written notice of the specific Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, the circumstances by which the Insured first became aware of such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act; and

(b)     requests coverage under this Policy for any subsequently resulting Claim for such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act;

then any Claim subsequently made arising out of such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act will be treated as if it had been first made during the Policy Period.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 118 05 01

DO 80 286 08 04

**Endorsement No.: 20**
**Named Insured: Capitol Bancorp, Ltd.**
**Policy No.: ELU122778-11**

**Effective: September 09, 2011**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# DOMESTIC PARTNER ENDORSEMENT

In consideration of the premium charged, Section II Definition (J)(5) of the Policy shall include the domestic partner of any person set forth in Section II Definition (J)(1) – (J)(4), but only to the extent the domestic partner is a party to any Claim solely in their capacity as a domestic partner to such persons and only for the purposes of any Claim seeking damages recoverable from community property, property jointly held by any such person and domestic partner, or property transferred from any such person to the domestic partner.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 286 08 04

Page 1 of 1

DO 80 312 05 05

| | |
|---|---|
| **Endorsement No.: 21** | **Effective: September 09, 2011** |
| **Named Insured: Capitol Bancorp, Ltd.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU122778-11** | **Insurer: Indian Harbor Insurance Company** |

# AMEND NOTICE OF CLAIM ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (A)(1) of the Policy is amended to read in its entirety as follows:

(1)     As a condition precedent to any right to payment under this Policy with respect to any Claim, the Insured shall give written notice to the Insurer of any Claim as soon as practicable after it is first made and the Risk Manager & General Counsel of such Company first becomes aware of such Claim.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 51

DO 80 551 02 10

| | |
|---|---|
| **Endorsement No.: 22** | **Effective: September 09, 2011** |
| **Named Insured: Capitol Bancorp, Ltd.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU122778-11** | **Insurer: Indian Harbor Insurance Company** |

# SECTION 11, 12 & 15 ENDORSEMENT

In consideration of the premium charged:

(1)     Section II Definition (M)(3) of the Policy is amended to read in its entirety as follows:

"(3)     matters which are uninsurable under the law pursuant to which this Policy is construed; provided that the Insurer will not assert that the portion of any settlement in a Claim arising from an initial or subsequent public offering of the Company's securities constitutes uninsurable loss due to the alleged violations of Section 11 and/or 12 of the Securities Act of 1933 as amended (including alleged violations of Section 11 and/or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933)."

(2)     Section III Exclusion (F)(2) of the Policy will not apply to allegations in a Claim asserted against an Insured under Section 11 and/or 12 of the Securities Act of 1933 as amended arising out of an initial or subsequent public offering of the Company's securities (including alleged violations of Section 11 and/or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933).

All other terms, conditions and limitations of this Policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 52

DO 83 09 06 00

**Endorsement No.: 23**
**Named Insured: Capitol Bancorp, Ltd.**
**Policy No.: ELU122778-11**

**Effective: September 09, 2011**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# ERISA EXCLUSION

In consideration of the premium charged, Section III Exclusions (C) is deleted and replaced by the following:

(C)     for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulation promulgated thereunder or any similar, federal, state or local law or regulation;

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 83 12 08 00

**Endorsement No.: 24**
**Named Insured: Capitol Bancorp, Ltd.**
**Policy No.: ELU122778-11**

**Effective: September 09, 2011**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# AMEND DISHONESTY EXCLUSION

In consideration of the premium charged, Section III Exclusion (F) is deleted and replaced by the following:

    (F)    brought about or contributed to in fact by any:

        (1)    intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

        (2)    profit or remuneration gained by any Insured to which such Insured is not legally entitled;

        as determined by a final adjudication in the underlying action;

All other terms, conditions and limitations of this Policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 54

DO 80 284 08 04

**Endorsement No.: 25**                                    **Effective: September 09, 2011**
**Named Insured: Capitol Bancorp, Ltd.**           **12:01 A.M. Standard Time**
**Policy No.: ELU122778-11**                          **Insurer: Indian Harbor Insurance Company**


# AMEND GENERAL CONDITIONS (C)(1) ENDORSEMENT


In consideration of the premium charged, Section VI General Conditions (C)(1) of the Policy is amended to read in its entirety as follows:

(1)     All Loss payable under this Policy will be specifically excess of and will not contribute with any other valid and collectible insurance, including but not limited to any insurance under which there is a duty of defend, unless such other insurance is specifically excess of this Policy.  This Policy will not be subject to the terms of any other insurance policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 293 10 04

| | |
|---|---|
| **Endorsement No.: 26** | **Effective: September 09, 2011** |
| **Named Insured: Capitol Bancorp, Ltd.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU122778-11** | **Insurer: Indian Harbor Insurance Company** |

# AMEND REPRESENTATION CLAUSE ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (I) of the Policy is amended to read in its entirety as follows:

(I)     The Insured represents that the statements and particulars contained in the Application as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy.  No knowledge or information possessed by any Insured will be imputed to any other Insured. In the event that any of the particulars or statements in the Application are untrue, this Policy will be void with respect to any Insured who knew of such untruth.  With respect to the coverage available under Insuring Agreement (A) of the Policy, this Policy shall not be rescinded by the Insurer.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 56

DO 80 569 08 10

| | |
|---|---|
| Endorsement No.: 27 | Effective: September 09, 2011 |
| Named Insured: Capitol Bancorp, Ltd. | 12:01 A.M. Standard Time |
| Policy No.: ELU122778-11 | Insurer: Indian Harbor Insurance Company |

# AMEND DEFINITION OF LOSS ENDORSEMENT

In consideration of the premium charged, Section II Definition (M) of the Policy is amended to read in its entirety as follows:

"(M)   'Loss' means damages, judgments, settlements, pre-judgment and post-judgment interest or other amounts (including punitive, exemplary or multiple damages, where insurable by law) and Defense Expenses in excess of the Retention that the Insured is legally obligated to pay.  Loss will not include:

(1)   fines, penalties or taxes imposed by law; provided that Loss will specifically include (subject to the terms, conditions and limitations of this Policy, including but not limited to Section III Exclusion (F), civil penalties assessed against an Insured Person pursuant to Section 2(g)(2) of the Foreign Corrupt Practices Act of 1977 (15 U.S.C. 78dd-2(g)(2)) and Section 308 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246 (a), or

(2)   matters which are uninsurable under the law pursuant to which this Policy is construed.

NOTE:   With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law.  If, based on the written opinion of counsel for the Insured, punitive damages are insurable under applicable law, the Insurer will not dispute the written opinion of counsel for the Insured."

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 569 08 10

Manuscript 96 02 01

| | |
|---|---|
| Endorsement No.: 28 | Effective: September 09, 2011 |
| Named Insured: Capitol Bancorp, Ltd. | 12:01 A.M. Standard Time |
| Policy No.: ELU122778-11 | Insurer: Indian Harbor Insurance Company |

# IRA/KEOGH ENDORSEMENT

In consideration of the premium charged:

(1)    The term "Wrongful Act," as defined in Section II Definitions (S) of the Policy is amended to include any IRA/Keogh Wrongful Act, as defined below.

(2)    Solely for the purposes of this endorsement, the term "IRA/Keogh Wrongful Act" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by an Insured Person while acting in his or her capacity as an administrator or trustee of an individual retirement account or H.R. 10 (Keogh) plan of the Company, but solely if such individual is serving as such pursuant to a written agreement with the Company.

(3)    No coverage will be available under this Policy for Claims for any IRA/Keogh Wrongful Act based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

    (a)    any mechanical or electronic failure or breakdown or malfunction of any machine or system of machines, or of any systems, applications or other software and/or any peripheral components;

    (b)    any dispute with regard to fees or charges for any Insured Person's services;

    (c)    the bankruptcy of, or suspension of payments by, any bank or banking firm or any broker or dealer in securities or commodities;

    (d)    any actual or alleged invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, batter or loss of consortium;

    (e)    any conflict of interest or bad faith by any Insured Person or by any person for whose actions any Insured Person is legally responsible;

    (f)    any failure to effect or maintain insurance; or

    (g)    any Insured Person's acquisition of any stock of the Company.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 58

DO 80 14 04 00

**Endorsement No.: 29**                                      **Effective: September 09, 2012**
**Named Insured: Capitol Bancorp, Ltd.**          **12:01 A.M. Standard Time**
**Policy No.: ELU122778-11**                          **Insurer: XL Specialty Insurance Company**

# AMEND POLICY PERIOD ENDORSEMENT

In consideration of an additional premium of $500,000.00 charged:

(1)     Item 2 of the Declarations is amended to read as follows:

Item 2. Policy Period:   From: September 09, 2011                 To: September 20, 2012
At 12:01 AM Standard Time at your Mailing Address Shown Above.

(2)     It is expressly understood and agreed that the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations shall continue to be the maximum aggregate Limit of Liability for the entire Policy Period, as amended above.

(3)     Item 8 of the Declarations is amended to read as follows:

Item 8. Premium:
Taxes, Surcharges or Fees                          $0.00
Total Policy Premium                  $1,750,000.00

(4)     The term "Application," as used in this Policy, shall be deemed to include any additional application and any updated or supplemental information relating to the application for this Policy attached to and forming part of this Policy, including any materials submitted therewith, all of which are on file with the Insurer and are a part of the Policy, as if physically attached.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 14 04 00                                                                                          Page 1 of 1

Manuscript 14790 09 12

**Endorsement No.: 30**
**Named Insured: Capitol Bancorp, Ltd.**
**Policy No.: ELU122778-11**

**Effective: September 09, 2012**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# AMEND NOTICE ENDORSEMENT

In consideration of the premium charged:

(1)     Section VI General Conditions (A)(2) of the Policy is deleted in its entirety.

(2)     Section II Definition (C) of the Policy is amended to read in its entirety as follows:

"(C)     'Claim' means any civil proceeding in a court of law or equity, or any criminal proceeding which is commenced by the return of an indictment."

(3)     Section II Definitions (Q) of the Policy, as amended by Endorsement No. 7 to the Policy, is amended to read in its entirety as follows:

(Q)     'Securities Claim' means a Claim made against any Insured:

(1)     for a violation of any federal, state, local regulation, statute or rule regulating securities, including but not limited to the purchase or sale of, or offer to purchase or sell, securities which is:

(a)     brought by any person or entity based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the purchase or sale of, or offer to purchase or sell, securities of the Company; or

(b)     brought by a security holder of a Company with respect to such security holder's interest in securities of such Company; or

(2)     brought derivatively on behalf of the Company by a security holder of such Company."

Endorsement No. 7 to the Policy shall be deemed deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2012 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

XL 80 06 04 00

**Endorsement No.: 31**                                    **Effective: September 09, 2012**
**Named Insured: Capitol Bancorp, Ltd.**          **12:01 A.M. Standard Time**
**Policy No.: ELU122778-11**                          **Insurer: Indian Harbor Insurance Company**

# DELETE AN ENDORSEMENT

In consideration of the premium charged, Endorsement No. 30 is deleted.

All other terms, conditions and limitations of this policy shall remain unchanged.

Stanford Decl. Ex. 2 – Page 61

DO 80 14 04 00

**Endorsement No.:  32**                                    **Effective: September 20, 2012**
**Named Insured: Capitol Bancorp, Ltd.**                    **12:01 A.M. Standard Time**
**Policy No.: ELU122778-11**                                **Insurer: Indian Harbor Insurance Company**

# AMEND POLICY PERIOD ENDORSEMENT

In consideration of an additional premium of $1,500,000.00 charged:

(1)     Item 2 of the Declarations is amended to read as follows:

        Item 2. Policy Period:   From: September 09, 2011           To: September 09, 2013
        At 12:01 AM Standard Time at your Mailing Address Shown Above.

(2)     It is expressly understood and agreed that the maximum aggregate Limit of Liability set forth in Item 3 of the
        Declarations shall continue to be the maximum aggregate Limit of Liability for the entire Policy Period, as
        amended above.

(3)     Item 8 of the Declarations is amended to read as follows:

        Item 8. Premium:
        Taxes, Surcharges or Fees                    $0.00
        Total Policy Premium              $3,250,000.00

(4)     The term "Application," as used in this Policy, shall be deemed to include any additional application and any
        updated or supplemental information relating to the application for this Policy attached to and forming part of
        this Policy, including any materials submitted therewith, all of which are on file with the Insurer and are a part
        of the Policy, as if physically attached.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**XL 80 20 01 02**

| | |
|---|---|
| **Endorsement No.: 33** | **Effective: September 09, 2012** |
| **Named Insured: Capitol Bancorp, Ltd.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU122778-11** | **Insurer: Indian Harbor Insurance Company** |

# ADD/DELETE AN ENDORSEMENT
# (FOR ADDITIONAL PREMIUM)

In consideration of an additional premium of $250,000.00 charged:

(1)     Endorsement No. 34 is added to this Policy.

(2)     Item 8 of the Declarations is amended to read in its entirety as follows:

"Item 8 Premium:  $3,500.000.00 Total Policy Premium"

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 20 01 02

Page 1 of 1

DO 80 375 11 06

| | |
|---|---|
| Endorsement No.: 34 | Effective: September 09, 2012 |
| Named Insured: Capitol Bancorp, Ltd. | 12:01 A.M. Standard Time |
| Policy No.: ELU122778-11 | Insurer: Indian Harbor Insurance Company |

# CONVERT POLICY TO RUN-OFF UPON HAPPENING OF SPECIFIC EVENT

In consideration of the premium charged:

(1)    Immediately upon the date which the event described in paragraph (2) below occurs:

    (a)    coverage under this Policy will continue in full force and effect with respect to any Claim for a Wrongful Act, Employment Wrongful Act and Company Wrongful Act committed or allegedly committed before such event, but coverage will cease with respect to any Claim for a Wrongful Act, Employment Wrongful Act and Company Wrongful Act committed or allegedly committed on or after such event (hereinafter, the date of such event, "Conversion Date").

    (b)    The Expiration Date set forth in Item 2 of the Declarations shall be amended to that date exactly Six (6) years after the Conversion Date.

    (c)    The term "Company" shall not include those Subsidiaries created or acquired after the Conversion Date.

    (d)    Section VI General Conditions (F) of the Policy and Item 5 of the Declarations, and all other references in the Policy to an Optional Extension Period, are deleted in their entirety.

    (e)    Section VI General Conditions (D) is deleted in its entirety.

    (f)    Section VI General Conditions (E)(1) is amended to read as follows:

        "(1)    Except for the nonpayment of premium, as set forth in (E)(2) below, the Parent Company has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice stating when, not later than the Expiration Date set forth in ITEM 2 of the Declarations such cancellation shall be effective."

    (g)    Section VI General Conditions (A)(2) of the Policy is deleted in its entirety.

(2)    The event upon the happening of which coverage under this Policy will cease with respect to continuing Wrongful Acts, Employment Wrongful Acts and Company Wrongful Acts as described in paragraph (1) above, is as follows:

Change in Control or at the Insured's Request

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 14 04 00

**Endorsement No.: 35**                          **Effective: September 09, 2013**
**Named Insured: Capitol Bancorp, Ltd.**         **12:01 A.M. Standard Time**
**Policy No.: ELU122778-11**                      **Insurer: Indian Harbor Insurance Company**

# AMEND POLICY PERIOD ENDORSEMENT

In consideration of an additional premium of $873,500.00 charged:

(1)     Item 2 of the Declarations is amended to read as follows:

Item 2. Policy Period:   From: September 09, 2011                 To: September 09, 2014
At 12:01 AM Standard Time at your Mailing Address Shown Above.

(2)     It is expressly understood and agreed that the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations shall continue to be the maximum aggregate Limit of Liability for the entire Policy Period, as amended above.

(3)     Item 8 of the Declarations is amended to read as follows:

Item 8. Premium:
Taxes, Surcharges or Fees               $0.00
Total Policy Premium                    $4,373,500.00

(4)     The term "Application," as used in this Policy, shall be deemed to include any additional application and any updated or supplemental information relating to the application for this Policy attached to and forming part of this Policy, including any materials submitted therewith, all of which are on file with the Insurer and are a part of the Policy, as if physically attached.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 14 04 00                                                    Page 1 of 1

DO 80 552 03 10

**Endorsement No.: 36**
**Named Insured: Capitol Bancorp, Ltd.**
**Policy No.: ELU122778-11**

**Effective: February 15, 2013**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# AMEND DEFINITION OF "COMPANY" WITH SEPARATE RETENTION AND SUBLIMIT

In consideration of the premium charged:

(1)     The term "Company," as defined in Section II. DEFINITIONS (D) of the Policy, is amended to include any entity or entities specified below:

Capitol National Bank

(2)     With respect to any Claim against any entity included within the term "Company" by reason of paragraph (1) above or any Insured Person by reason of his or her status as such with respect to any such entity, ITEM 4 of the Declarations is amended to read in its entirety as follows:

"ITEM 4. Retentions

| | |
|---|---|
| $0 | each Insured Person under INSURING AGREEMENT I (A) |
| $500,000 | each Claim under INSURING AGREEMENT I (B) |
| $500,000 | each Claim under INSURING AGREEMENT I (C)" |

(3)     With respect to Claims against any entity included within the term "Company" by reason of paragraph (1) above or any Insured Person by reason of his or her status as such with respect to any such entity, the maximum aggregate limit of liability for all Loss, including Defense Expenses, will be $1,000,000, which amount is part of, and not in addition to, the Insurer's maximum aggregate Limit of Liability set forth in Item 3 of the Declarations, which amount is applicable to all Loss from all Claims for which this Policy provides coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 511 03 09

**Endorsement No.: 37**
**Named Insured: Capitol Bancorp, Ltd.**
**Policy No.: ELU122778-11**

**Effective: September 09, 2013**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# SPECIFIC ENTITY EXCLUSION

In consideration of the premium charged, effective September 09, 2013, the term "Company," as defined in Section II Definitions (D) of the Policy shall not include the following entities scheduled below (the "Excluded Entities"). Accordingly, no coverage shall be available under this Policy for any Claim:

(1)     made against the Excluded Entities or any director, officer, employee or subsidiary of an Excluded Entity, including any director or officer of any subsidiary, on or after September 09, 2013; or

(2)     based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty, Wrongful Act, Employment Practices Wrongful Act or Company Wrongful Act committed or allegedly committed on or after September 09, 2013 by any Excluded Entity or any director, officer, employee or subsidiary of an Excluded Entity, including any director or officer of any subsidiary.

Excluded Entities

Summit Bank of Kansas City

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 15990 10 13

Endorsement No.: 38                          Effective: September 09, 2013
Named Insured: Capitol Bancorp, Ltd.         12:01 A.M. Standard Time
Policy No.: ELU122778-11                      Insurer: Indian Harbor Insurance Company

# CONVERSION OF EXCESS COVERAGE TO RUN-OFF

In consideration of the premium charged, it is understood and agreed that:

(1)     Solely with respect to coverage under this Policy for Loss which, when added to the amount of Loss, if any, previously paid under this Policy, would exceed $5,000,000:

   (a)     Item 2 of the Declarations will be deemed to have been amended to read in its entirety as follows:

      "Item 2.  Policy Period:          From:  September 9, 2013  To: September 9, 2019
                              At 12:01 AM Standard Time at your Mailing Address Shown Above"

   (b)     Item 5 of the Declarations will be deemed to have been deleted in its entirety.

   (c)     No coverage will be available under this Policy for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any Wrongful Act, Employment Practices Wrongful Act or Company Wrongful Act committed or attempted, or allegedly committed or attempted, on or after September 9, 2013.

   (d)     The term "Company" will be deemed not to include any Subsidiaries created or acquired on or after September 9, 2013.

   (e)     Section VI. GENERAL CONDITIONS (A)(2) will be deemed to have been deleted in its entirety.

   (f)     Section VI. GENERAL CONDITIONS (D) will be deemed to have been deleted in its entirety.

   (g)     Section VI. GENERAL CONDITIONS (E)(1) will be deemed to have been amended to read in its entirety as follows:

      "(1)     Except for the nonpayment of premium, as set forth in (E)(2) below, the Parent Company has the exclusive right to cancel this Policy.  Cancellation may be effected by mailing to the Insurer written notice stating when, not later than the Expiration Date set forth in Item 2 of the Declarations, such cancellation shall be effective."

   (h)     Section VI. GENERAL CONDITIONS (F) will be deemed to have been deleted in its entirety, and all other references in the Policy to an Optional Extension Period will also be deemed to have been deleted in their entirety.  The Insureds will have no right to purchase any Optional Extension Period with respect to such coverage upon the termination or expiration of this Policy.

(2)     It is expressly understood and agreed that the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations will continue to be the maximum aggregate Limit of Liability for the entire Policy Period.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2013 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

XL 80 23 07 02

**Endorsement No: 39**                              **Effective: September 16, 2013**
**Named Insured: Capitol Bancorp Ltd.**       **12:01 A.M. Standard Time**
**Policy No: ELU122778-11**                      **Insurer: Indian Harbor Insurance Company**

# TIE IN LIMITS ENDORSEMENT

In consideration of the premium charged, in addition to this Policy, the Insurer or an affiliated company of the Insurer (any such affiliated company being included within the term "Insurer" for the purposes of this endorsement) has also agreed to issue to the person or entity named in Item 1 of the Declarations the following policy(ies) (such policy(ies), the "Other Policy(ies)"):

> Internet/Electronic Banking Liability Insurance Policy, Policy Number ELU131337-13, Issued by Indian Harbor Insurance Company

It is expressly acknowledged by the person or entity named in Item 1 of the Declarations that the premium for these policies has been negotiated with the understanding that all policies would have shared limits of liability.  Therefore, in consideration of the premium charged:

(1)     Any payment of loss or damages, including costs and expenses of defense, under this Policy will reduce the limit of liability available under the Other Policy(ies) for the defense and settlement of, or the payment of any liabilities in connection with, any claim or claims made under the Other Policy(ies).

(2)     Any payment of loss or damages, including costs and expenses of defense, under the Other Policy(ies) will reduce the Limit of Liability available under this Policy for the defense and settlement of, or the payment of any liabilities in connection with, any claim or claims made under this Policy during the Policy Period.

(3)     If the Insurer shall have paid loss or damages, including costs and expenses of defense, under this Policy and loss or damages, including costs and expenses of defense, under the Other Policy(ies) in an aggregate amount equaling $5,000,000 any and all obligations of the Insurer under this Policy will be completely fulfilled and extinguished, and the Insurer will have no further obligations of any kind or nature whatsoever under this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.