UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

INDIAN HARBOR INSURANCE
COMPANY,

       Plaintiff/Counterclaim Defendant,     Civil Action No.: 1:14-cv-01017

vs.                                   Hon. Janet T. Neff

CLIFFORD ZUCKER, in his capacity
as Liquidation Trustee for the Liquidation
Trust of Capitol Bancorp Ltd. and Financial
Commerce Corporation,

       Defendant/Counterclaim Plaintiff

and

JOSEPH D. REID, CRISTIN K. REID,
and BRIAN K. ENGLISH,

       Defendants.

---

**BRIEF OF DEFENDANTS CRISTIN REID AND BRIAN ENGLISH IN RESPONSE TO
INDIAN HARBOR INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II
OF ITS COMPLAINT AND ON THE COUNTERCLAIM
FILED BY THE LIQUIDATION TRUSTEE**

## Table of Contents

Table of Authorities………………………………………………………………ii, iii

Introduction……………………………………………………………………………1

Statement of Facts………………………………………………………………………2

     I.     The Indian Harbor D&O Policies…………………………………………2

     II.    The Bankruptcy Proceedings and Amended Joint Liquidating Plan…………4

     III.   The Liquidation Trust Agreement……………………………………………6

     IV.   The *Zucker* Action……………………………………………………………7

Standard of Review………………………………………………………………………9

Argument…………………………………………………………………………………9

     I.     Coverage for the *Zucker* Action is not barred by the Insured
          vs Insured exclusion………………………………………………………...…10

          A.    The *Zucker* Action is not a claim "by, on behalf of, or in
               the name or right of" Capitol Bancorp…..……………………………10

          B.    Indian Harbor cannot resort to extrinsic evidence where the Insured vs
               Insured Provision is Unambiguous……………………………….…..12

          C.    Indian Harbor's interpretation would render the policy
               coverage illusory………………………………………………….....13

          D.    Courts refuse to apply the Insured vs Insured exclusion under identical
               circumstances…………………………………………………...…15

     II.    Cristin Reid and Brian English reserve the right to assert the continued
          effectiveness of the 2010-2011 Indian Harbor Policy………………………….20

Conclusion…………………………………………………………………………….....21

**Table of Authorities**

**Cases**

*Allstate Ins. Co. v. Tomaszewski*, 180 Mich. App. 616, 447 N.W.2d 849 (1989) ........................ 10

*Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376 (D. Del. 2002) ................................... 17

*Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663 (9th Cir. 2009) ........................ 20

*City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool,* 473 Mich. 188, 702 N.W.2d 106 (2005)........................................................................................................................................... 13

*DeFrain v. State Farm Mut. Auto. Ins. Co.*, 491 Mich. 359, 817 N.W.2d 504 (2012)................. 10

*Fidelity & Deposit Co. of Maryland v. Zandstra*, 756 F. Supp. 429 (N.D. Cal. 1990) ............... 18

*In re Buckeye Countrymark, Inc.*, 251 B.R. 835 (Bankr. S.D. Ohio 2000) ........................... 17, 18

*In re Cent. La. Grain Coop., Inc.*, 467 B.R. 390 (Bankr. W.D. La. 2012) ........... 11, 12, 16, 17, 19

*In re County Seat Stores, Inc.*, 280 B.R. 319 (Bankr. S.D.N.Y. 2002) ....................................... 18

*In re Dow Corning Corp.*, 270 B.R. 393 (Bankr. E.D. Mich. 2001) ..................................... 11, 12

*In re Laminate Kingdom, LLC d/b/a Floors Today*, No. 07-01792-AJC, 2008 WL 704396 (Bankr. S.D. Fla. Mar. 13, 2008) ................................................................................................ 18

*In re Lucre, Inc.*, 434 B.R. 807 (Bankr. W.D. Mich. 2010) ................................................... 11, 12

*In re Molten Metal Tech., Inc.*, 271 B.R. 711 (Bankr. D. Mass. 2002) ...................... 13, 17, 18, 19

*In re Smith Trust*, 480 Mich. 19, 745 N.W.2d 754 (2008) ........................................................... 13

*Morgan Stanley Group, Inc. v. New Eng. Ins. Co.*, 225 F.3d 270 (2d Cir. 2000) ........................ 21

*Narath v. Executive Risk Indem., Inc.*, No. CIV.A. 01-10122-RWZ, 2002 WL 924231 (D. Mass. Mar. 14, 2002) ............................................................................................................................. 18

*Pioneer State Mut. Ins. Co. v. Dells*, 301 Mich. App. 368; 836 N.W.2d 257 (2013).................. 10

*Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340 (6th Cir. 1996) ............................... 13

*Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 703 N.W.2d 23 (2005) ................................................. 10

*Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, 475 F.3d 805 (6th Cir. 2007) .......... 13

*Shathaia v. Travelers Cas. Ins. Co. of Am.*, 984 F. Supp. 2d 714 (E.D. Mich. 2013).................. 14

*United States Bank Nat'l Ass'n v. Fed. Ins. Co.*, 664 F.3d 693 (8th Cir. 2011) ........................... 20

**Statutes**

11 U.S.C. § 362 .................................................................................................... 14

11 U.S.C. § 541 .................................................................................................... 14

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) .............................................................. 14

**Treatises**

2 Couch on Insurance § 29:35 .............................................................................. 21

## INTRODUCTION

This is a dispute about the insurance coverage due under a director and officer liability insurance policy that plaintiff Indian Harbor sold to Capitol Bancorp ("Capitol"), a company that it knew was experiencing difficulty. Even after Capitol entered bankruptcy, Indian Harbor demanded and received millions of additional dollars in premiums to continue coverage for Capitol's directors and officers. In fact, even after Capitol's creditors threatened litigation against the directors and officers, Indian Harbor extended the policy for additional premium payments. Now, after the threatened lawsuit has been filed against the insured directors and officers (the very risk for which Capitol purchased and continued the D&O coverage), Indian Harbor seeks to dodge its obligation to provide the promised coverage.

Under the bankruptcy code, the commencement of a bankruptcy action creates a new legal entity, the bankruptcy estate, which is comprised of essentially all of the property formerly belonging to the debtor. In Capitol's case, this included any and all claims against Capitol's directors and officers. Pursuant to the jurisdiction and orders of the Bankruptcy Court, the estate transferred any causes of action to another legal entity, the Liquidating Trust, tasked with collecting Capitol's assets and distributing them to Capitol's creditors. Clifford Zucker, in his capacity as the Liquidating Trustee for the Liquidating Trust, subsequently sued the directors and officers (the "*Zucker* Action").

Indian Harbor argues that coverage for the *Zucker* Action is excluded under an Insured vs Insured exclusion. Under this aptly-named exclusion, Indian Harbor will not provide coverage for a claim against an insured person under the policy if the claim is brought "by, on behalf of, or in the name or right of" an insured person under the policy. Indian Harbor says that the *Zucker* Action is brought "by, on behalf of, or in the name or right of" an insured. This is wrong. Neither Zucker nor the Liquidating Trust are insureds, and a plain reading of the exclusion

1

reveals that the *Zucker* Action is not covered by the exclusion. Courts around the country, including courts within the Sixth Circuit, confronting the identical issue have confirmed that the exclusion does not apply to these circumstances and have enforced the insureds' rights to coverage. Indeed, under Indian Harbor's suggested interpretation of its policy, the D&O coverage provisions would be illusory as no lawsuit would be covered. Cristin Reid and Brian English therefore request that this Court enter summary judgment declaring that the Insured vs Insured exclusion does not apply to the *Zucker* Action.

## STATEMENT OF FACTS

### I.      The Indian Harbor D&O Policies

On September 8, 2010, in consideration for the payment of a premium in the amount of $1,250,000, Indian Harbor issued to Capitol a claims-made D&O policy for September 9, 2010 to September 9, 2011. Joint Statement of Facts Not in Dispute ("JSOF") ¶¶ 51-52, the "2010 Policy."

On September 8, 2011, in consideration for the payment of an initial premium in the amount of $1,250,000, Indian Harbor issued to Capitol another D&O policy for September 9, 2011 to September 9, 2012. JSOF ¶¶ 53-54, the "2011 Policy." The 2011 Policy was a renewal of the 2010 Policy. JSOF ¶ 53.

In September 2012, Endorsement Nos. 29 and 32 extended the Policy Period to September 9, 2013 for an additional $2,000,000 of premiums, and for another $250,000 of premiums, Endorsement Nos. 33 and 34 provided that the 2011 Policy would convert to a run-off upon a change in control or upon Insured's request, which would extend the expiration date of the Policy Period to a date six years after the conversion. JSOF ¶¶ 55-56. On September 9, 2013, Endorsement No. 35 extended the Policy Period for another year, to September 9, 2014, for an additional premium of $873,500. JSOF ¶ 57.

Under Insuring Agreement A of the 2010 and 2011 Policies, Indian Harbor agreed to "pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period**, or, if applicable, the **Optional Extension Period,** for a **Wrongful Act . . .**, except for **Loss** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification."[1]  JSOF ¶ 59.

The 2010 and 2011 Policies define **Insured Persons** to include (among others) all directors, officers and employees, including former employees, of the Company entities, as defined by the policies.  JSOF ¶ 66.  Joseph Reid, Cristin Reid and Brian English are **Insured Persons** under the 2010 and 2011 Policies.  JSOF ¶ 69.  The 2010 and 2011 Policies define **Company** to include the **Parent Company** (*i.e.*, Capitol) and any **Subsidiary**.  JSOF ¶¶ 67-68.

Endorsement No. 4 to the 2010 and 2011 Policies is captioned the "Insured v. Insured Exclusion."  The Insured v. Insured Exclusion states that "The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured Person** . . . :"

(G)     by, on behalf of, or in the name or right of, the **Company** or any **Insured Person,** except and to the extent such **Claim:**

        (1) is brought derivatively by a security holder of the **Company** who, when such **Claim** is made and maintained is acting independently of, and without the active solicitation, assistance, participation or intervention of an **Insured Person** or the **Company;**

        (2) is in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an **Insured Person** which is part of or results directly from a **Claim** which is not otherwise excluded by the terms of this Policy;

        (3) is an **Employment Practices Claim.**

JSOF ¶ 70.

---

[1] Words appearing in bold are defined terms under the Policies.

3

Both the 2010 policy and the 2011 policy expressly require that Indian Harbor consent to any settlement offer or settlement of any Claim. JSOF ¶ 75.

## II.   The Bankruptcy Proceedings and Amended Joint Liquidating Plan

On August 9, 2012, Capitol and Financial Commerce Corporation ("FCC") filed for bankruptcy. JSOF ¶ 3. During the bankruptcy proceedings, Capitol and FCC (the "Debtors") continued to manage the assets of the bankruptcy estate as "debtors-in-possession" under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code until the establishment of a Liquidating Trust. Statement of Material Facts of Defendants Cristin K. Reid and Brian K. English ("RSOF") ¶ 1. On August 29, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Creditors' Committee") in the bankruptcy proceedings. JSOF ¶ 4.

On May 16, 2013, the Debtors filed a proposed Joint Plan and a disclosure statement in support of the Plan which was and is available on Pacer. JSOF ¶ 5. The proposed Joint Liquidating Plan provided for a full release of all claims against the officers and directors of the Debtors. *Id.*

On May 23, 2013, the Creditors' Committee filed a motion seeking leave to investigate and possibly pursue claims against the officers and directors of the Debtors before September 9, 2013, the then existing expiration date of the Policy Period under the 2011 Policy (the "Committee Motion"). JSOF ¶ 6. While the Committee Motion was filed under seal, Capitol sent a copy of it to Indian Harbor on May 30, 2013 and Indian Harbor acknowledged receipt of it on July 3, 2013. JSOF ¶¶ 8–9, 76–77. After full briefing, the Bankruptcy Court heard argument on the Committee Motion on July 9, 2013, and denied it from the bench. JSOF ¶ 7.

On December 31, 2013, with the support of the Creditors' Committee, the Debtors filed a motion seeking Bankruptcy Court approval for a settlement resolving the Creditors' Committee's

objections to the Amended Joint Liquidating Plan and several other disputes between the Debtors, the Creditors' Committee, and individual members of the Creditors' Committee (the "Settlement Motion"). JSOF ¶¶ 10–11. On January 21, 2014, the Bankruptcy Court heard the Settlement Motion and approved the Settlement Agreement. JSOF ¶ 17. On January 27, 2014, the Debtors filed an Amended Joint Liquidating Plan (the "Amended Plan"). *Id.* On January 29, 2014, the Bankruptcy Court entered findings of fact, conclusions of law and an order approving the Amended Disclosure Statement and confirming Amended Plan (the "Confirmation Order"). JSOF ¶ 18. All of these pleadings were and are available on Pacer.

In the Confirmation Order, the Bankruptcy Court found that the appointment of the Liquidation Trustee is consistent with the interest of holders of Claims and Equity Security Interests and with public policy. JSOF ¶ 25. The Bankruptcy Court further found that the Amended Plan is fair and equitable and that the Debtors, the Creditors' Committee and their respective members, officers, directors, agents, financial advisors, attorneys, employees and affiliates and representatives acted in good faith. JSOF ¶¶ 26-27.

Article V(D) of the Amended Plan, as approved by the Confirmation Order, established a Liquidating Trust to complete the liquidation of any remaining assets of the Debtors, to pursue any claims that the Debtors' Estates may have, to handle objections to Claims and to collect and distribute all proceeds of such remaining liquidation, including any remaining Proceeds from the Sale Process, in accordance with the distribution provisions of the Amended Plan. JSOF ¶ 19. Pursuant to Article V(D) of the Amended Plan, as amended by the Confirmation Order, certain assets, including "all causes of action belonging to the Debtors, including causes of action against directors, officers and Insiders (as defined herein) of the Debtors" were transferred to the Liquidating Trust. JSOF ¶ 21.

Article XII(D) of the Amended Plan, captioned "Exculpation and Limitation of Liability," states that the Debtors and their directors and officers shall have no liability for any Claims based on post-petition conduct, except for willful misconduct or gross negligence. JSOF ¶ 22. With respect to pre-petition conduct, Article XII(E) of the Amended Plan states that the Debtors' directors and officers are not released from any Claims, but amounts they shall be required to pay on account of causes of action transferred by the Debtors to the Liquidating Trust shall be "strictly limited" to amounts actually recovered from insurance. JSOF ¶ 23. Article XII(E) further obligates the directors and officers to timely submit such notices as may be required under such insurance policies, to take all reasonable actions necessary to pursue coverage under such policies including filing, and diligently prosecute any legal actions (in court or arbitration) necessary to contest any denials of coverage by the insurance companies, and prohibits the directors and officers from settling or compromising their coverage claim under insurance policies without the "express written consent" of the Liquidation Trustee. *Id.*

At least since its receipt of the Committee Motion on May 30, 2013, Indian Harbor had been monitoring the docket of the Bankruptcy Court proceedings. RSOF ¶ 2. Indian Harbor raised no objection to the terms of the settlement or the Amended Plan. RSOF ¶ 3.

## III.    The Liquidation Trust Agreement

The Declaration of Trust contained in Section 2.03 of the Liquidating Trust Agreement states:

> The Plan provides for the delivery to the Liquidation Trustee of all of the right, title and interest in and to the Assets in Trust to and for the benefit of the Beneficiaries for the uses and purposes stated herein and in the Plan. . . .

JSOF ¶ 32. Section 1.01 of the Liquidation Trust Agreement defines "Assets" to mean "all of the Debtors' right, title and interest in and to the assets of Debtors' Estates that are transferred to the Liquidating Trust in accordance with the Plan." JSOF ¶ 33. The Liquidation Trust

6

Agreement defines "Estates" to mean "the estates of the Debtors created under Sections 301 and 541 of the Bankruptcy Code." JSOF ¶ 35. And it defines "Beneficiaries" to mean "the holders of an Allowed Claim or Equity Security Interest in Classes that are entitled to distribution from the Liquidating Trust as described in the Plan." JSOF ¶ 34.

Recital D of the Liquidation Trust Agreement identifies four primary purposes of the Liquidating Trust, the first of which is to "pursue Causes of Action . . . for the benefit of the Beneficiaries. . ." JSOF ¶ 31. Section 4.06 of the Liquidation Trust Agreement prohibits the Liquidating Trustee from settling any Causes of Action where the amount in controversy equals or exceeds $100,000 without authorization from the Bankruptcy Court. JSOF ¶ 38.

The Liquidation Trust Agreement established a three member Liquidation Trust Oversight Committee, which initially included Cristin Reid. JSOF ¶¶ 39–40. On August 8, 2014, Cristin Reid resigned from the Liquidation Trust Oversight Committee, effective immediately, noting, among other things, that Mr. Zucker had failed to convene a single meeting of the Liquidation Trust Oversight Committee, hold a single conference call between Mr. Zucker and the Liquidation Trust Oversight Committee, or otherwise report to the Liquidation Trust Oversight Committee as to any matters relating to the Liquidating Trust, so that it had been impossible for the Liquidation Trust Oversight Committee to perform its functions and, further, that if Mr. Zucker had any communications with the other members of the Liquidation Trust Oversight Committee, Ms. Reid had been improperly excluded from such communications. JSOF ¶ 44.

## IV.   The *Zucker* Action

On August 7, 2014, counsel for the Liquidation Trustee sent an email to Cristin Reid and Brian English with a draft complaint and requested that they entered into a tolling agreement. JSOF ¶ 43. They forwarded a copy of the email and attachments to Indian Harbor. *Id.*, JSOF ¶ 82. The officers declined to enter into a tolling agreement. JSOF ¶ 43.

On August 8, 2014, the Liquidation Trustee filed a complaint against Joseph Reid, Cristin Reid and Brian English in the lawsuit, *Zucker v. Reid, et al.*, Case No. 14-cv-850 (W.D. Mich.) (the "*Zucker* Action"). JSOF ¶ 45. The complaint in the *Zucker* Action contains five counts for alleged breaches of fiduciary duties by the individual defendants in their capacities as officers of Capitol. JSOF ¶¶ 46–47.

The *Zucker* Action is a **Claim** made against Joseph Reid, Cristin Reid and Brian English, who are **Insured Persons**, for alleged **Wrongful Acts**, within the meaning of Insuring Agreement A of the 2011 Policy. RSOF ¶ 4. All of the Wrongful Acts alleged in the *Zucker* Action occurred after September 9, 2010 and prior to January 1, 2013. RSOF ¶ 5. All reasonable legal fees and expenses incurred by Joseph Reid, Cristin Reid and Brian English in the defense of the *Zucker* Action are **Defense Expenses** within the meaning of the 2011 Policy. RSOF ¶ 6.

Indian Harbor acknowledged receipt of the Zucker complaint but purported to reserve all its rights to deny coverage and agreed to advance the reasonable costs of defense of the *Zucker* action upon the condition that each of the individual insureds sign an agreement to repay any and all defense costs advanced to any insured. JSOF ¶ 83. Indian Harbor then commenced the present lawsuit against its own insureds and Zucker asking for this Court to decide whether coverage exists for the *Zucker* Action under the policy which it drafted and maintains is clear and unambiguous. Complaint, *Indian Harbor v. Zucker, et al.*, No. 1:14-cv-01017 (W.D. Mich. Sept. 26, 2014), Doc. 1. On September 9, 2014, defendants Cristin Reid and Brian English filed a request for a Pre-Motion Conference seeking leave to file a Motion to Dismiss Zucker's complaint in the *Zucker* Action under Fed. R. Civ. P. 12(b)(6). JSOF ¶ 48. On December 19, 2014, however, this Court entered an Order staying all proceedings in the *Zucker* Action pending further proceedings in this case. JSOF ¶ 50.

On October 23, 2014, Cristin Reid and Brian English filed a motion to enforce indemnification obligations and to enjoin the *Zucker* Action in the Bankruptcy Court. JSOF ¶ 84. The motion sought to require the Liquidation Trustee to indemnify the individual defendants from the trustee's claims against them based on indemnification provisions contained in Capitol's Articles of Incorporation and Bylaws, as well as indemnification agreements between Capitol and Reid and English. JSOF ¶ 85. The Bankruptcy Court denied Reid's and English's motion, explicitly noting the separate legal status that existed between Capitol and the Liquidating Trust: "the liquidating Trust was created by the plan and the order confirming the plan. Debtor and the Trust are separate legal entities with separate counsel, separate assets, and separate duties." JSOF ¶¶ 88, 91.

## STANDARD OF REVIEW

Summary judgment is proper if there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a).

## ARGUMENT

This is not the first time that an insurance company has accepted millions of dollars in premiums, only to shirk its responsibility to provide coverage. Capitol paid Indian Harbor almost $4.5 million for director and officer liability coverage. Indian Harbor does not dispute that the *Zucker* Action falls within the policy's coverage, so the only question is whether any exclusions apply. None do. Cristin Reid, Brian English and Joseph Reid are therefore entitled to coverage for the Zucker Action, including indemnification for their defense expenses.

I.   **Coverage for the *Zucker* Action is not barred by the Insured vs Insured exclusion.**

A.   **The *Zucker* Action is not a claim "by, on behalf of, or in the name or right of" Capitol Bancorp.**

Michigan courts interpret an insurance contract the same way as any other type of contract: by giving its terms their plain and ordinary meaning. *Allstate Ins. Co. v. Tomaszewski*, 180 Mich. App. 616, 619, 447 N.W.2d 849 (1989); *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 491 Mich. 359, 367, 817 N.W.2d 504 (2012).   The best understanding of the parties intent is derived from the language in the contract, and unambiguous language must be enforced as written. *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 468, 703 N.W.2d 23 (2005).   Further, it is a basic rule of insurance contracts that exclusions should be strictly construed against the insurer. *Pioneer State Mut. Ins. Co. v. Dells*, 301 Mich. App. 368, 378–79, 836 N.W.2d 257 (2013). Thus, unless coverage for the *Zucker* Action is unambiguously excluded under the policy, Indian Harbor must provide coverage.

Indian Harbor relies on an exclusion in its policy known as the "Insured vs Insured" exclusion.   JSOF ¶ 70.   The Insured vs Insured exclusion excludes coverage for any claim made against an "Insured Person" . . . "by, on behalf of, or in the name or right of, the **Company** or any **Insured Person**." *Id.*   But the Liquidation Trust action is not a claim made "by, on behalf of, or in the name or right of" Capitol or any **Insured Person**.   The *Zucker* Action is not a claim brought "by . . . any Insured Person."   By its plain terms, the *Zucker* Action is brought *by* Clifford Zucker, not personally, but as Liquidation Trustee for the Liquidation Trust.   JSOF ¶ 45. Clearly Clifford Zucker is not an insured, and the Liquidation Trust is a distinct legal entity from the **Company**, Capitol. *In re Cent. La. Grain Coop., Inc.*, 467 B.R. 390, 397 (Bankr. W.D. La. 2012).   Likewise, Capitol is distinct from the bankruptcy estate, the entity which held any and all D&O claims upon the bankruptcy filing. *In re Lucre, Inc.*, 434 B.R. 807, 832 n. 57 (Bankr.

10

W.D. Mich. 2010) ("A bankruptcy estate is a legal entity that exists separate and apart from the petitioning debtor. As for the estate's trustee or debtor-in-possession, they are simply the representatives through which this fictional entity is able to act."); *In re Dow Corning Corp.*, 270 B.R. 393, 398 (Bankr. E.D. Mich. 2001) ("The Debtor and the estate, however, are separate and distinct legal entities."). Simply put, the Liquidation Trustee—the plaintiff in the *Zucker* Action—is not an **Insured Person** under the policy, so the *Zucker* Action cannot be a claim brought "by" an **Insured Person**.

The *Zucker* Action is also not a claim against an **Insured Person** brought "on behalf of . . . any **Insured Person**" because it is brought on behalf of the Liquidating Trust's Beneficiaries, which are primarily security holders. As Indian Harbor says in its Memorandum of Law, the phrase "on behalf of" is understood to mean "on the part of (another), in the name of, as the agent or representative of, on account of, for, instead of." *Behalf Definition I.1.c*, Oxford English Dictionary.[2] In the context of the *Zucker* Action, the trustee is not acting on behalf of Capitol or any **Insured Person**. Indeed, the Trust Agreement that vested the trustee with power expressly instructs him to act on behalf of Capitol's *creditors*, which includes the holders of equity interests. JSOF ¶ 32; see also *In re Cent. La. Grain Coop., Inc.*, 467 B.R. at 397 ("Nor are they claims brought 'on behalf' of the Insured Entity because . . . the Trustee administers the estate (which includes the claims asserted in this case) 'for the benefit of the debtor's creditors,' not the defunct debtor."). The Trust Agreement names as its "Beneficiaries" any "holders of an Allowed Claim or Equity Security Interest in Classes that are entitled to distribution from the Liquidating Trust as described in the Plan." JSOF ¶ 34. Thus, the Liquidation Trustee acts "on the part of, in the name of, as the agent or representative of, on account of, for, instead of" Capitol's creditors, not any Insured Person.

---

[2] Available at: http://www.oed.com/view/Entry/17187 (last visited March 5, 2015).

For the same reason that the *Zucker* Action is not brought "on behalf of" an Insured Person, it is also not brought "in the name of" an Insured Person. Indeed, "in the name of" is one of the definitions for "on behalf of." *Behalf Definition I.1.c*, Oxford English Dictionary.[3] As already stated, the Liquidation Trustee is pursuing the *Zucker* Action in the name of and on behalf of one group: Capitol's creditors, the Beneficiaries of the Liquidating Trust.

Finally, the *Zucker* Action cannot have been brought "in the right of" Capitol because Capitol had no right to bring any claims. As a matter of law, Capitol's bankruptcy filing created a new, separate and distinct, legal entity—the bankruptcy estate. 11 U.S.C. § 541; *In re Lucre, Inc.*, 434 B.R. at 832 n. 57; *In re Dow Corning Corp.*, 270 B.R. at 398 ("The Debtor and the estate, however, are separate and distinct legal entities."). The **Company**, Capitol, does not own and has no right to pursue the *Zucker* Action, so the Liquidation Trustee cannot possibly bring a claim in the right of Capitol. *See also In re Cent. La. Grain Coop., Inc.*, 467 B.R. at 398. Thus, the language of the Insured vs Insured exclusion in the Indian Harbor policy does not apply to the *Zucker* Action.

### B.    Indian Harbor cannot resort to extrinsic evidence where the Insured vs Insured Provision is Unambiguous.

Indian Harbor suggests that this Court's interpretation should be influenced by policy language that was deleted by a policy endorsement. But a previous version of an insurance policy has no bearing on the policy's interpretation. In Michigan, courts ascertain the intention of contracting parties solely by examining the four corners of the agreement. *In re Smith Trust*, 480 Mich. 19, 24, 745 N.W.2d 754 (2008); *Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1350 (6th Cir. 1996). Extrinsic evidence, including negotiations and prior versions, may not be considered when the policy is unambiguous. *Sault Ste. Marie Tribe of Chippewa Indians*

---

[3] Available at: http://www.oed.com/view/Entry/17187 (last visited March 5, 2015).

*v. Granholm*, 475 F.3d 805, 812 (6th Cir. 2007); *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool,* 473 Mich. 188, 198, 702 N.W.2d 106 (2005).

In fact, other courts examining Insured vs Insured exclusions have expressly refused to consider extrinsic evidence because of the exclusion's unambiguous language.  In *In re Molten Metal Tech., Inc.*, 271 B.R. 711 (Bankr. D. Mass. 2002), the insurance company argued that the court should consider extrinsic evidence of the parties' negotiations to ascertain the meaning of the Insured vs Insured exclusion.  *Id.* at 726.  The court rejected the insurance company's invitation in no uncertain terms.  It held that, "extrinsic evidence is not admissible to establish the parties' intent where, as here, the contract language is not ambiguous and the purpose of the extrinsic evidence is to broaden an exclusion well beyond the scope of its plain meaning." *Id.* at 726-27.  And the court said that the language of the Insured vs Insured exclusion "is not uncertain or equivocal about coverage of the claims at issue." *Id.* at 727.  Like in *Molten Metal*, the language of the Indian Harbor policy unambiguously covers the *Zucker* Action, and the Insured vs Insured exclusion, by its plain terms, is not applicable.  So review of evidence external to the contract is neither necessary nor permitted.

### C.     Indian Harbor's interpretation would render the policy coverage illusory.

Indian Harbor's interpretation is also prohibited by the doctrine barring illusory insurance coverage.  The doctrine of illusory coverage requires an insurance contract to be interpreted so that coverage is not merely a delusion to the insured.  *Shathaia v. Travelers Cas. Ins. Co. of Am.*, 984 F. Supp. 2d 714, 723 n.5 (E.D. Mich. 2013); Doctrine of Illusory Coverage, Black's Law Dictionary (10th ed. 2014).  Courts avoid interpreting an insurance contract in a way that coverage is never triggered and the insurer bears no risk. *Id.*

If the Court were to accept Indian Harbor's current argument, then Indian Harbor peddled a policy that was a nullity.  Indian Harbor first agreed to insure Capitol in 2010, when Indian

Harbor knew that Capitol was in trouble.  JSOF ¶ 51.  Indian Harbor renewed the policy in 2011.

JSOF ¶ 53.  In September of 2012, after Capitol filed for bankruptcy, Indian Harbor demanded

and received a substantial premium payment from Capitol to extend the policy period for another

year.  JSOF ¶ 55.  Indian Harbor again extended the policy period, for additional premiums, in

September 2013, even after the Creditors Committee sought to assert claims against the directors

and officers.  JSOF ¶¶ 6, 9, 57, 76–77.  Because bankruptcy law barred suits against Capitol, 11

U.S.C. § 362(a), the law and the undisputed facts demonstrate that the only reason for extending

the Policy Period was to provide coverage for the directors and officers.

But Indian Harbor's current interpretation of its policy would have effectively absolved it

from ever covering any suits against Capitol's directors and officers.  Indian Harbor contends

that a claim against directors and officers for a fiduciary breach is property of the company.

Indian Harbor Memorandum of Law, p. 9.  Once Capitol filed for bankruptcy in August of 2012,

though, any claims against directors and officers became part of the bankruptcy estate, 11 U.S.C.

§ 541(a)(1), meaning that neither Capitol nor its shareholders had a right to sue the directors and

officers.  But while the policy clearly intended to provide coverage for shareholder derivative

actions (*see* exception (a) to the Insured v Insured provision), Indian Harbor now even seeks to

avoid that coverage.  Indian Harbor argues that the shareholder derivative exception does not

apply because (a) the bankruptcy prevents the shareholders from suing the directors and officers,

and (b) the Liquidation Trust is not a "security holder."  Indian Harbor Memorandum of Law, p.

14.  So, ironically, Indian Harbor argues that the Liquidating Trust **is** the same as the Company

for purposes of the Insured v Insured exclusion, but that the Liquidating Trust **is not** the same as

the security holders for purposes of the shareholder derivative exception to that exclusion.[4]

---

[4] Indian Harbor argues that the Liquidating Trustee is pursuing claims "on behalf of" the
**Company**.  We disagree.  As stated above, the Liquidating Trustee is not the **Company**, so the

Indian Harbor can't have it both ways. If the Liquidating Trust is a separate legal entity from the security holders it represents, then it must also be a separate legal entity from the **Company**, which it does not represent. If the Court were to adopt Indian Harbor's reasoning, the policy would be completely illusory. Indian Harbor would have accepted millions in premiums in September 2012 and again in 2013, without accepting any risk under its Insurance Agreements, by the fortuitous (for Indian Harbor, anyway) event of the bankruptcy. Under Indian Harbor's current position, who could permissibly sue Capitol's directors and officers and not have coverage excluded? Under Indian Harbor's interpretation, no such plaintiff exists, which means that Indian Harbor sold Capitol illusory coverage. Its interpretation of the policy should be rejected.

D.    **Courts refuse to apply the Insured vs Insured exclusion under identical circumstances.**

The great weight of authority from courts confronted with this scenario around the country counsels against Indian Harbor's interpretation of the Insured vs Insured exclusion. Courts hold that a trustee or similar entity is not an "insured" for purposes of Insured vs Insured exclusions.

The recent case of *In re Cent. La. Grain Coop., Inc.*, involved a situation and policy language virtually identical to this case. *In re Cent. La. Grain Coop., Inc.*, 467 B.R. at 390. The Insured vs Insured exclusion there excluded coverage for claims brought "by, on behalf of, or in

---

Insured vs Insured exclusion does not apply. But even indulging Indian Harbor's position for the sake of argument, it is clear that the *Zucker* Action would be closer in nature to a shareholder derivative action (and excepted from the Insured vs Insured exclusion) than it would be to an action of the **Company**. It is clear that Capitol did not, and indeed, *refused* to assert the *Zucker* claims. The Liquidating Trust, however, represents its Beneficiaries, including the trust preferred securities holders, which can no longer sue its directors and officers directly in a shareholder derivative action. Thus, to the extent that the Liquidating Trustee represents those security holders, it brings the *Zucker* Action for them. Consequently, the Trustee in the *Zucker* Action is not only pursuing a claim that the **Company** did not have a right to bring, it is also doing so on behalf of someone else -- the creditors, i.e. **Beneficiaries** of the Liquidation Trust.

the right of the Insured Entity in any capacity." *Id.* at 393. The Trustee brought a claim on behalf of the debtor's estate against the debtor's directors and officers. *Id.* at 392. On the question whether the Insured vs Insured exclusion absolved the insurer, the court granted summary judgment against the insurance company, holding that the exclusion was inapplicable.

The *Louisiana Grain* Court first concluded that claims brought by a bankruptcy trustee are neither "by" nor "on behalf of" the insured debtor. The Court held that "the claims brought by the Trustee are not claims brought 'by' the Insured Entity because the Trustee is a distinct legal entity with different duties and functions, and the language of the exclusion does not sweep the Trustee into the definition of 'Insured Entity'." *Id.* at 397. The Court then said, "Nor are they claims brought 'on behalf' of the Insured Entity because . . . the Trustee administers the estate (which includes the claims asserted in this case) 'for the benefit of the debtor's creditors,' not the defunct debtor." *Id.* So too here. A claim brought by the Trustee is neither a claim brought "by" Capitol nor a claim brought "on behalf of" Capitol.

The *Louisiana Grain* Court then concluded that a claim brought by a bankruptcy trustee cannot be brought "in the right of" the insured debtor. The Court rejected the insurance company's argument that a bankruptcy trustee brings claims in the right of the debtor

> because the 'Insured Entity' in this case—Central Louisiana Grain Cooperative—had no rights to or ownership interest in any of the claims asserted by the Trustee. Rather, all the Debtor's rights with respect to these claims (along with all other estate property under 11 U.S.C. § 541) vested in the bankruptcy estate upon the filing of the petition.

*Id.* at 398. Put another way, the Trustee's action could not have been brought "in the right of" the debtor because the debtor, having become defunct, had no right to bring *any* causes of action.

The only case in this Circuit to address the application of an Insured vs Insured exclusion to claims brought by a bankruptcy trustee comes from the Bankruptcy Court for the Southern District of Ohio. In *In re Buckeye Countrymark, Inc.*, 251 B.R. 835 (Bankr. S.D. Ohio 2000), the

court held that an Insured vs Insured exclusion did not bar coverage for a case brought by a bankruptcy trustee against an insured debtor's management. The court noted that the insurance company's argument that the trustee should be deemed an "insured" for purposes of the exclusion—the very same argument advanced by Indian Harbor—"ignores the very real differences between the Trustee and the Debtor." *Id.* at 841. These "very real differences" include that the trustee and debtor are separate legal entities and that the trustee owes a fiduciary duty to creditors, unlike the debtor, who owes a duty to shareholders. Regarding the "on behalf of" language contained in the exclusion, the *Buckeye Countrymark* Court held that "[a]s representative of the estate, the Trustee brings his claims on behalf of the Debtor's creditors rather than on behalf of the Debtor making this exclusionary language inapplicable to the Trustee's claims." *Id.* This Court should apply the same reasoning and hold that the exclusion is inapplicable.

The *Louisiana Grain* and *Buckeye Countrymark* Courts are far from alone in holding that an Insured vs Insured exclusion does not apply in the circumstances presented here. In *Molten Metal*, the court concluded "that, as used in the insured-versus-insured exclusion in the Primary Policy, 'the Company' is [the insured] and does not include its chapter 11 trustee, and the term 'brought by' is not broad enough to encompass the circumstances presented here." *In re Molten Metal Tech., Inc.*, 271 B.R. at 728. Thus, the court held that the Insured vs Insured exclusion did not apply. Likewise, in *Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 404 (D. Del. 2002), the court held that "the 'insured v. insured' exclusion should not apply to claims brought by a bankruptcy Estate Representative against the former directors and officers of the Debtor where the Debtor is the insured entity, . . . ." *See also In re County Seat Stores, Inc.*, 280 B.R. 319, 328–29 (Bankr. S.D.N.Y. 2002) (holding an Insured vs Insured Exclusion inapplicable to a bankruptcy trustee action); *In re Laminate Kingdom, LLC d/b/a Floors Today*, No. 07-01792-

AJC, 2008 WL 704396, at *4 (Bankr. S.D. Fla. Mar. 13, 2008) ("[T]he bankruptcy trustee is prosecuting the claims on behalf of the estate and for the benefit of creditors having valid claims against it and he is not prosecuting these claims 'by, on behalf of, in right of the Insured Entity.'"); *Narath v. Executive Risk Indem., Inc.*, No. CIV.A. 01-10122-RWZ, 2002 WL 924231, at *2 (D. Mass. Mar. 14, 2002).

All of these cases rely on a unifying theme: that no actual or threatened collusion exists between the bankruptcy trustee and the directors and officers of the insured entity. The potential for collusion—that insured directors would allow themselves to be sued by their company so the *company* could collect the insurance proceeds—is the purpose of an Insured vs Insured exclusion. *Fidelity & Deposit Co. v. Zandstra*, 756 F. Supp. 429, 431 (N.D. Cal. 1990); *In re Molten Metal Tech., Inc.*, 271 B.R. at 728. No threatened or actual collusion exists in this case because the Trustee's interests are truly adverse to the directors and officers.

Courts have time and again recognized that the trustee of a bankruptcy estate is genuinely adverse to the insured entity's directors and officers. For example, the *Buckeye Countrymark* Court recognized that the purpose of the exclusion is to protect an insurance company from collusive suits between the insured corporation and its insured officers and directors. *In re Buckeye Countrymark, Inc.*, 251 B.R. at 841. The court held, however, that "[w]hen the plaintiff is not the corporation but a bankruptcy trustee acting as a genuinely adverse party to the defendant officers and directors, there is no threat of collusion." *Id.* And in *In re Molten Metal*, the court recognized that "concerns for collusion and other mischief are generally not implicated where the successor in interest is a third party, such as . . . a trustee in bankruptcy, who is not in collusion with the officers and directors." *In re Molten Metal Tech., Inc.*, 271 B.R. at 728. *See also In re Cent. Louisiana Grain Coop., Inc.*, 467 B.R. at 398 (holding that refusing to apply the exclusion is "consistent with the underlying purpose of the insured versus insured exclusion to

avoid collusive claims.").

Indian Harbor accuses the Liquidation Trustee and the directors and officers of Capitol of colluding. Not so. Not only has there been no collusion, but there is not even a threat of collusion between the Liquidation Trustee and Cristin Reid, Joseph Reid, and Brian English. Indeed, the parties have been at odds at every turn. Indian Harbor expresses concern that Capitol's Amended Joint Liquidating Plan, which preserved causes of action against directors and officers, was approved by the same people, thereby demonstrating collusion. *See* Indian Harbor Memorandum of Law, p. 14. But the Plan did not *require* the Liquidation Trustee to pursue claims against the directors and officers to which they would acquiesce; the Plan merely *preserved* the cause of action for the Trustee's consideration, a necessary concession for a negotiated bankruptcy. JSOF ¶ 23. Moreover, the Plan would not have needed a *mandate* that the Insiders pursue coverage if not for the genuine adversity between the Insiders and the Liquidation Trustee. *Id.* Indian Harbor wrongfully infers at page 14 of its brief that Cristin Reid's signature of the Settlement Agreement with the Unsecured Creditors and her participation as a member of the Liquidation Trustee Oversight Committee violates language in Endorsement No. 4 (Insured v Insured) prohibiting "the active solicitation, assistance, participation or intervention of an Insured Person or the Company." First, that language is found in the exception to the exclusion for derivative claims by shareholders which Indian Harbor contends has no application here. *See* JSOF ¶ 70. Second, Cristin Reid signed the Settlement Agreement with the Unsecured Creditors in her official capacity as President of the Debtors. JSOF ¶ 42. Third, when Cristin Reid discovered that the Liquidation Trustee intended to pursue claims against her, Brian English, and Joseph Reid—a decision that she had been left out of and with which she disagreed—she immediately resigned from the Liquidation Trust Oversight Committee. JSOF ¶ 44, RSOF ¶ 7. The *Zucker* Action was not filed at the behest of the Reids

and English.  *Id*.  Nor, will the debtors see any of the insurance proceeds as the liability of the debtors greatly exceed any sum that may be paid on the Zucker Action.  RSOF ¶ 8.

The Reids and English have vociferously contested the *Zucker* Action.  The Court will recall that Cristin Reid and Brian English already sought leave to file a Motion to Dismiss the *Zucker* Action, and they will renew that request as soon as that aspect of the litigation restarts.  JSOF ¶ 48.  Likewise, Reid and English sought, and were denied, indemnification from the Liquidation Trustee after arguing a motion before the bankruptcy court.  JSOF ¶¶ 87–88.  In short, Cristin Reid and Brian English categorically deny the wrongdoing alleged in the *Zucker* Action and have challenged those allegations at every turn; there is no risk of collusion.

The lack of collusion sets this case apart from what Indian Harbor calls the "usual playbook."  *See* Indian Harbor Memorandum of Law, p. 15 n. 4.  Indeed, the cases cited by Indian Harbor involve rich consent judgments entered between the bankruptcy trustees and the insureds after the insurance company denies coverage but before the coverage claim is litigated.  *See Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663 (9th Cir. 2009); *United States Bank Nat'l Ass'n v. Fed. Ins. Co.*, 664 F.3d 693 (8th Cir. 2011).  The consent judgments in those cases may have been collusive; but they stand in stark contrast to the *Zucker* Action, where the defendants have vehemently denied liability and sought to dismiss the case on the pleadings.

In fact, both the insurance policy and the Amended Joint Liquidation Plan contain safeguards against the very type of collusion about which Indian Harbor raises Cain.  The Indian Harbor policy expressly requires Indian Harbor to consent on any settlement offer or settlement, so there could not be a consent judgment without *Indian Harbor's* consent.  JSOF ¶ 75.  Likewise, the Liquidation Trust Agreement requires the Trustee to obtain the approval of the bankruptcy court before settling any claim over $100,000.  JSOF ¶ 38.  These safeguards are additional evidence that no risk of collusion exists here.  This Court should reject the suggestion

of collusion by Indian Harbor. The Court, therefore, should properly interpret the Insured vs Insured Exclusion as inapplicable to the *Zucker* Action.

**II.     Cristin Reid and Brian English reserve the right to assert the continued effectiveness of the 2010-2011 Indian Harbor Policy.**

The Insured vs Insured exclusion is identical in the 2010 Policy and the 2011 Policy, thus the enforceability of the 2010 Policy need not be resolved now. Cristin Reid and Brian English accept Indian Harbor's concession that the *Zucker* Action was a claim made during the 2011-2014 policy period. Indian Harbor Memorandum of Law, p. 7. But Indian Harbor's complaint for declaratory relief purports to reserve the right to assert various exclusions not addressed in this motion. To the extent that any argument that Indian Harbor has reserved may require Cristin Reid and Brian English to alternatively claim coverage under the 2010 Policy, they reserve the right to do so.[5]

**CONCLUSION**

Indian Harbor assumed a risk when it initially agreed to insure Capitol in 2010, knowing that it was a company in trouble. JSOF ¶ 51. Indian Harbor assumed additional risk when it twice extended the policy period for Capitol's coverage after Capitol had filed for bankruptcy. JSOF ¶¶ 55, 57. Now Indian Harbor asks this Court to interpret Indian Harbor's insurance contract against the plain language of the agreement, in a way that would render Indian Harbor's coverage illusory, and contrary to the way that many courts have interpreted the same contractual

---

[5] Because the second policy (2011 Policy) was a renewal of the first (2010 Policy), it effected a continuation of the original policy. *See Morgan Stanley Group, Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 280 (2d Cir. 2000) ("The 1987 policy [renewal] is therefore 'merely a continuation or extension of the original contract,' continued in force and without interruption."); 2 Couch on Insurance § 29:35 ("In the absence of a clear provision in the policy defining the nature of the renewal, some courts regard the renewed or renewal contract as though it were merely a continuation or extension of the original contract. By this view, the renewal of a policy continues it in force without interruption, and the renewal certificate is simply a contract to continue in force a preexisting policy of insurance.")

language.  The Court should reject this invitation and hold that the Insured vs Insured exclusion in Indian Harbor's insurance policy does not bar coverage for the Zucker Action.

BARRIS, SOTT, DENN & DRIKER, PLLC

By:/s/  Sharon M. Woods
     Sharon M. Woods (P22542)
     Dennis M. Barnes (P39401)
     Michael K. Steinberger (P76702)
Attorneys for Defendants Brian K. English and
Cristin K. Reid, Only
211 W. Fort Street, 15th Floor
Detroit, Michigan  48226
(313) 965-9725
swoods@bsdd.com
dbarnes@bsdd.com
msteinberger@bsdd.com

Dated: March 26, 2015
448201v8