UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INDIAN HARBOR INSURANCE,

               Plaintiff/Counter-Defendant,            Case No. 1:14-cv-1017

v.                                                HON. JANET T. NEFF

CLIFFORD ZUCKER, *as Liquidation
Trustee for the Liquidation Trust of Capitol
Bancorp Ltd. and Financial Commerce
Corporation*,

               Defendant/Counter-Claimant,

and

JOSEPH D. REID, et al.,

               Defendants.
_____/

## OPINION

Plaintiff Indian Harbor Insurance ("Indian Harbor") filed this declaratory judgment action against Defendants Clifford Zucker, Joseph D. Reid, Cristin K. Reid and Brian K. English, following the filing of a related action, *Zucker v. Reid, et al.*, 1:14-cv-850 (W.D. Mich. 2014), seeking recovery against the officers and directors of a corporation insured by Indian Harbor. Pending before the Court is Plaintiff Indian Harbor's Motion for Summary Judgment on Counts I and II of its Complaint and on the Counterclaim filed by the Liquidation Trustee (Dkt 33). Defendant Clifford Zucker, the Liquidation Trustee, has filed a Response in opposition (Dkt 38). Defendants Cristin Reid and Brian English have filed a Response in opposition (Dkt 39), and Defendant Joseph Reid has filed a Response adopting the Reid/English Response (with one brief additional argument)

(Dkt 43).  Plaintiff has filed a Reply (Dkt 42).  Having fully considered the parties' submissions, the Court concludes that oral argument would not assist in the disposition of the issues presented.  *See* W.D. Mich. LCivR 7.2(d).  For the reasons that follow, Plaintiff's motion is granted.

## I. Background

In this insurance coverage dispute, Plaintiff seeks a declaratory judgment that two directors' and officers' ("D&O") liability policies issued to Capitol Bancorp, Ltd. (Capitol Bancorp), a bank holding company, do not provide coverage for a lawsuit filed against three officers, Defendants Joseph and Cristin Reid and English, for alleged breaches of fiduciary duties owed by them to the company, which filed for bankruptcy protection in 2012 and subsequently was reorganized into a Liquidation Trust, represented by Defendant Liquidation Trustee, Clifford Zucker.  Plaintiff's Complaint (Dkt 1) alleges three declaratory judgment counts:

> Count I:   Indian Harbor is entitled to a judgment declaring that the 2010-2011 Policy and the 2011-2014 Policy do not provide coverage for any loss, including defense expenses, in connection with the Liquidation Trust Action because the Insured v. Insured Exclusion in the policies bars coverage for the Liquidation Trust Action in its entirety.

> Count II:   Indian Harbor is entitled to a judgment declaring that the 2010-2011 Policy does not provide coverage for the Liquidation Trust Action because it is a Claim that was "first made" after the expiration of the Policy Period on September 9, 2011.

> Count III: Indian Harbor is entitled to a judgment declaring that other policy provisions contained in the 2010-2011 Policy and/or the 2011-2014 Policy may limit Indian Harbor's contractual obligations thereunder and/or exclude coverage in connection with the Liquidation Trust Action.

Defendant Zucker has filed a Counterclaim (Dkt 11) seeking a declaratory judgment declaring that:

> (i)   the 2011-2014 Policy provides coverage for any loss, including defense expenses, in connection with the Liquidation Trust Action;

(ii)   the Insured vs. Insured Exclusion does not bar coverage for any loss, including defense expenses, in connection with the Liquidation Trust Action; and

(iii)   the Liquidation Trust Action relates to and is covered by the claim Indian Harbor was first put on notice of in May, 2013.

Plaintiff moves for summary judgment on Counts I and II of the Complaint and on the Counterclaim for declaratory relief filed by Zucker.

## II. Stipulated Facts

Pursuant to this Court's dispositive motion procedures, the parties have filed a Joint Statement of Facts Not in Dispute (JSOF, Dkt 35), which sets forth the following facts for purposes of the motion (identified by the corresponding numbered paragraph in the JSOF).

1.    Capitol Bancorp Ltd. ("Capitol Bancorp") is a bank holding company that owned individual community banks in several states. Capitol Bancorp is the parent of Financial Commerce Corporation ("FCC").

3.    On August 9, 2012, Capitol Bancorp and FCC filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The bankruptcy cases are jointly administered under the caption, *In re Capitol Bancorp Ltd.*, No. 12-58409-MBM (Bankr. E.D. Mich.).

4.    In the bankruptcy proceedings, no Chapter 11 trustee was appointed for the Debtors. On August 29, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") pursuant to Section 1102(a) and (b) of the Bankruptcy Code to represent the interests of the creditors.

16.   Pursuant to the Settlement Agreement, the Debtors agreed to amend certain provisions contained in a previously filed Joint Liquidating Plan, and a Liquidating Trust Declaration of Trust attached to the Plan, including, among other things, provisions relating to the membership on the Liquidation Trust Oversight Committee, the dissolution of the Creditors' Committee, the preservation and transfer of all causes of action belonging to the Debtors, including causes of action against directors, officers and Insiders, the limitation of any recovery on such claims to insurance proceeds, and the payments of certain fees and expenses of the Creditors' Committee, its members and their counsel. In exchange, the Creditors' Committee agreed, among other things, to withdraw its objections to the Liquidating Plan, to cause the individual members of the Creditors' Committee to withdraw

their objections to the Liquidating Plan, and to withdraw various other appeals and motions it had filed in the bankruptcy proceedings.

17.  On January 21, 2014, the Bankruptcy Court heard the Settlement Motion and granted approval of the Settlement Agreement between the Debtors and the Creditors' Committee. On January 27, 2014, the Debtors filed an Amended Joint Liquidating Plan (the "Amended Plan").

18.  On January 29, 2014, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law and Order Granting Final Approval of Amended Disclosure Statement and Confirming Amended Joint Liquidating Plan of Capitol Bancorp Ltd. and Financial Commerce Corporation (the "Confirmation Order").

27.  In the Confirmation Order, the Bankruptcy Court further found that, "[b]ased upon the record before the Court in these Chapter 11 Cases, the Debtors, the Committee and their respective members, officers, directors, agents, financial advisers, attorneys, employees and affiliates and representatives have acted in good faith within the meaning of Bankruptcy Code §1125(e) and are entitled to the protections afforded by Bankruptcy Code § 1125."

31.  Recital D of the Liquidation Trust Agreement identifies four primary purposes of the Liquidating Trust, which include: (i) to "pursue Causes of Action, including Causes of Action under chapter 5 of the Bankruptcy Code, for the benefit of the Beneficiaries in accordance with Treasury Regulation Section 301.7701-4(d)"; and (iv) to "distribute any proceeds as may be provided in the Plan, including any remaining Proceeds from the Sale Process, and otherwise exercise the duties of a chapter 7 trustee and debtor in possession."

20.  Article V(D) of the Amended Plan states, with respect to the Liquidating Trust Oversight Committee:

The Liquidating Trust Oversight Committee shall consist of three (3) members, two (2) of whom shall be selected by the [Creditors'] Committee and one (1) of whom shall be selected by the Board of Directors of CBC. The proposed members of the Liquidation Trust Oversight Committee shall meet (in person or by telephone) on or before the date of the hearing on confirmation of the Plan to choose, by majority vote, the Liquidation Trustee.

21.  Article V(D) of the Amended Plan, as amended by the Confirmation Order states: "[o]n the Effective Date, the Debtors shall contribute the following assets to the Liquidating Trust: … (ii) all causes of action belonging to the Debtors, including causes of action against directors, officers and Insiders (as defined herein) of the Debtors."

23.  With respect to pre-petition conduct, Article XII(E) of the Amended Plan, as amended by the Confirmation Order, states that the Debtors' directors and officers are not released from any Claims, but amounts they shall be required to pay on account of causes of action

4

transferred by the Debtors to the Liquidating Trust shall be "strictly limited" to amounts actually recovered from insurance. Article XII(E) further obligates the directors and officers to timely submit notices under such insurance policies, take actions to pursue coverage, including by the filing of legal actions to contest any coverage denials, and prohibits the directors and officers from settling or compromising their coverage claim under insurance policies without the "express written consent" of the Trustee. As Article XII(E) states:

> The Debtors' respective present and former members, partners, equityholders, officers, directors, employees, representatives, advisors, attorneys, agents and Professionals (collectively, the "**Insiders**") are not released from any Claims, obligations, rights, suits, damages, losses, causes of action, remedies and liabilities and such Claims, obligations, rights, suits, damages, losses, causes of action, remedies and liabilities are hereby expressly preserved and will be contributed to a Liquidating Trust on the Effective Date, consistent with Article V.D. hereof; provided, however, that the amounts the Insiders shall be required to pay on account of Claims, obligations, rights, suits, damages, losses, causes of action, remedies and liabilities based on acts or omissions occurring prior to the Petition Date (with the sole exception of causes of action under chapter 5 of the Bankruptcy Code, which shall not be subject to the limitations imposed by this Article XII.E.) shall in all cases be strictly limited to any amounts which may be actually recovered from any applicable insurance providers pursuant to any applicable insurance policies, including directors' and officers' liability insurance policies and proceeds thereof; provided, further, however, that the Insiders shall timely submit such notices as may be required under such insurance policies, shall take all reasonable actions necessary to pursue coverage under such policies including filing and diligently prosecuting any legal actions (in court or arbitration) necessary to contest any denials of coverage by the insurance companies issuing such policies, and shall not settle or otherwise compromise or waive any claims for coverage under such policies without the express written consent of the Liquidation Trustee. Except with respect to any proceeds of such insurance policies, including directors' and officers' liability insurance policies and proceeds thereof (and causes of action under chapter 5 of the Bankruptcy Code), (1) neither the Liquidation Trustee, nor any other person or entity, shall have any right to pursue collection against, or collect from, the property or other assets of the Insiders, or the Insiders' estate or heirs, for any Claims, obligations, rights, suits, damages, losses, causes of action, remedies or liabilities based on acts or omissions occurring prior to the Petition Date and (2) the Liquidation Trustee, and every person or entity acting by or through the Liquidation Trustee, is enjoined and directed not to take action of any kind against the property or other assets of the Insiders' or the Insiders' estates or heirs. …

5

51.    In 2010, Indian Harbor issued to Capitol Bancorp Management Liability and Company Reimbursement Insurance Policy No. ELU 118596-10 for the claims-made policy period September 9, 2010 to September 9, 2011 (the "2010 Policy"). Indian Harbor had not previously issued a primary directors' and officers' ("D&O") liability insurance policy to Capitol Bancorp.

53.    In or about September 2011, Indian Harbor issued to Capitol Bancorp Management Liability and Company Reimbursement Insurance Policy No. ELU 122778-11 for the one-year claims-made policy period September 9, 2011 to September 9, 2012 (the "2011 Policy"), as a renewal of the 2010 Policy.

55.    In or about September 2012, Indian Harbor amended the 2011 Policy by issuing six additional endorsements (Endorsement Nos. 29-34).  In consideration for the additional premium payment of $2 million, Endorsement Nos. 29 and 32 extended the Policy Period for an additional year, to September 9, 2013.

57.    In or about September 2013, Indian Harbor amended the 2011 Policy again by issuing additional endorsements, including Endorsement No. 35. In consideration for the additional premium payment of $873,500, Endorsement No. 35 extended the Policy Period for another year, to September 9, 2014.

58.    The Declarations Pages of the 2010 and 2011 Policies state, in capital letters appearing in boldface type:

> **THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD ….**

70.    Endorsement No. 4 to the 2010 and 2011 Policies is captioned the "Insured v. Insured Exclusion."  Endorsement No. 4 states that "Section III. Exclusions (G) is deleted and replaced."  As amended by Endorsement No. 4, the Insured v. Insured Exclusion in the 2010 and 2011 Policies states that "The Insurer shall not be liable to make any payment for Loss in connection with any **Claim** made against an **Insured Person** … :"

> (G)    by, on behalf of, or in the name or right of, the **Company** or any **Insured Person**, except and to the extent such **Claim**:
>
> > (1) is brought derivatively by a security holder of the **Company** who, when such **Claim** is made and maintained is acting independently of, and without the active solicitation, assistance, participation or intervention of an **Insured Person** or the **Company**;
> >
> > (2) is in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of

6

or results directly from a **Claim** which is not otherwise excluded
by the terms of this Policy;

(3) is an **Employment Practices Claim**.

68.     **Company** under the 2010 and 2011 Policies is defined to include the **Parent Company** (i.e.,
        Capitol Bancorp) and any **Subsidiary**. **Company** also includes 216 entities affiliated with
        Capitol Bancorp, which include the community banks, real estate holding companies, and
        trust companies listed by endorsement to the policies.

45.     Later on August 8, 2014, the Trustee filed a complaint against Joseph Reid, Cristin Reid and
        Brian English in the lawsuit, *Zucker v. Reid, et al.*, Case No. 14-cv-850 (W.D. Mich.) (the
        "*Zucker* Action").

46.     The complaint in the *Zucker* Action alleges that as officers of Capitol Bancorp, the
        individual defendants owed fiduciary duties to Capitol Bancorp to act in the company's best
        interests. The Complaint asserts that the individual defendants' purported breaches of their
        fiduciary duties caused damages to Capitol Bancorp.

88.     By written order dated November 25, 2014, the Bankruptcy Court denied [an
        indemnification] motion [filed by Cristin Reid and Brian English].

89.     During the hearing, the Bankruptcy Court stated that the purpose of the Liquidation Trust
        "was to pursue assets of the Debtor, including claims against the Insiders, and to distribute
        those assets to creditors."

91.     During the hearing, the Bankruptcy Court further stated:

        Debtor and the Trust are separate legal entities with separate counsel,
        separate assets, and separate duties. To the extent movants here have a claim
        for indemnification, it would be against Debtors, not the liquidating Trustee.

92.     During the hearing, the Bankruptcy Court concluded:

        In conclusion, for all these reasons the Court denies the relief requested by
        the movants. The liquidating Trustee has both the right and the duty to file
        claims against the movants. The – any recovery is limited to the policy limits
        under the D&O policy. I can't see any reason if in fact there is litigation
        that's involving the liquidating Trustee that they won't be asserting very
        strongly that there's insurance coverage. It works to the liquidating Trustee's
        advantage, but that's not – that's not for me. I don't know what's happening
        in that case, but given the very – the very clear language that recovery is
        limited to the proceeds that's in the liquidating Trustee's interests to find the
        – to argue that the insurance coverage applies, otherwise there's zero

recovery, but the defense and the cost affiliated with the defense of litigation are not – are not an obligation of the liquidating Trustee.

### III.  Legal Standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010).  The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  *Burgess*, 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson,* 477 U.S. at 251-52).

The parties agree that Michigan law applies with respect to the insurance contract.  *See Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 956 (6th Cir. 2006) (because Michigan is the forum state and the place where the policies were issued, Michigan law governs the interpretation of the insurance policy).  Under Michigan's rules for contract construction:

> [A]n insurance contract must be enforced in accordance with its terms. A court must
> not hold an insurance company liable for a risk that it did not assume. Second, a
> court should not create ambiguity in an insurance policy where the terms of the
> contract are clear and precise. Thus, the terms of a contract must be enforced as
> written where there is no ambiguity.

*Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193-94 (Mich. 1999) (citations

omitted). Ambiguous language in a policy should be construed against the drafter, typically, against

the insurer and in favor of the insured. *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 787 (Mich.

2003); *see also Henderson*, 596 N.W.2d at 194. It is the insurer's burden to prove that an exclusion

to coverage is applicable. *Heniser v. Frankenmuth Mut. Ins.*, 534 N.W.2d 502, 505 n. 6 (Mich.

1995).

## IV.  Analysis

Plaintiff's motion presents two issues for decision:

(1)    whether the Insured v. Insured Exclusion in both D&O policies excludes coverage

for the suit against the officers because the causes of action asserted by the

Liquidation Trust belonged exclusively to Capitol Bancorp.

(2)    whether the trustee's suit against the officers is outside the scope of the 2010 Policy.

The Court proceeds accordingly.

### A.  Policy Exclusion

First, with regard to the issue whether the Insured v. Insured Exclusion bars coverage for the

separate action against the officers, there appears to be universal recognition that the courts are

divided on this issue in the bankruptcy context. *See* Michael D. Sousa, *Making Sense of the

Bramble–Filled Thicket: the "Insured v. Insured" Exclusion in the Bankruptcy Context*, 23 EMORY

BANKR. DEV. J. 365, 404 (2007) (discussing the inconsistent judicial application of the exclusion

and the resulting incompatible decisions, and proposing a legal framework to provide a more uniform application of the exclusion); *see also Willson v. Vanderlick* (*In re Central Louisiana Grain Co-op., Inc.*), 467 B.R. 390, 394-96 (Bankr.W.D. La. 2012) (discussing the judicial treatment of the insured v. insured exclusion in the bankruptcy context and noting that courts are split).

Further, as the Ninth Circuit Court of Appeals observed in resolving a case involving a Chapter 11 bankruptcy, as here:

> Several bankruptcy decisions around the country, including one in this circuit, treat a postbankruptcy entity as different from the debtor before it went into chapter 11 for purposes of the insured versus insured exclusion. Several others hold that they are the same entity for this purpose. Few cases, and no circuit court decisions, deal with the specific situation of a chapter 11 debtor in possession.

*Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 670-71, n.15-17 (9th Cir. 2009) (citing numerous cases). And there is scant authority considering Sixth Circuit law with respect to this issue. In their extensive briefing, the parties cite only one case in this circuit to have considered the applicability of the insured v. insured exclusion, from the bankruptcy court in the Southern District of Ohio: *In re Buckeye Countrymark, Inc.*, 251 B.R. 835 (Bankr. S.D. Ohio 2000) (*see* Liquidation Trustee Br., Dkt 38 at PageID.1355 and Reid/English Br., Dkt 39 at PageID.1381, asserting that *In re Buckeye* is the sole case in the Sixth Circuit addressing the exclusion).

This jurisprudential backdrop has provided the parties with ample legal support for their opposing positions. Their arguments are a reflection of the inconsistent decisions across the country from courts encountering disputes over the insured v. insured exclusion, generally emphasizing different factors and circumstances to support contradictory outcomes. While the parties each raise a number of plausible arguments and cite to valid authority, the Court is persuaded that Plaintiff Indian Harbor rightfully prevails on the circumstances presented in this case.

10

The Indian Harbor 2010-2011 Policy and the 2011-2014 Policy both contain the same Insured v. Insured Exclusion. The Exclusion provides that the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured Person "by, on behalf of, or in the name or right of, the Company or any Insured Person," with three exceptions, none of which directly apply in this case (JSOF ¶ 70). Plaintiff Indian Harbor moves for summary judgment on the grounds that coverage for the trustee's lawsuit (the *Zucker* Action) is barred by the Insured v. Insured Exclusion, where it is undisputed that:

(a) Capitol Bancorp, in the liquidation plan it filed in its bankruptcy proceedings, agreed to create the Liquidation Trust;

(b) Capitol Bancorp agreed with its creditors that it would transfer to the Liquidation Trust all causes of action it had against its own officers;

(c) Capitol Bancorp entered into the Liquidation Trust Agreement with the Liquidation Trustee to create the trust and implement the assignment;

(d) The Liquidation Trust's suit asserts the causes of action that were assigned to it by Capitol Bancorp; and

(e) Cristin Reid, as Capitol Bancorp's President, signed the settlement agreement with the creditors, signed the liquidation plan, and signed the Liquidation Trust Agreement that precipitated the lawsuit naming her as a defendant, along with Joseph Reid and Brian English.

Plaintiff argues that in these circumstances, the Insured v. Insured Exclusion bars coverage because under Michigan law, causes of action belonging to a company must be asserted "in the name or right of" that company, and Capitol Bancorp's assignment to the Liquidation Trust does not

11

permit the Liquidation Trustee or the officers to circumvent the exclusion.  The Court agrees that these circumstances are unique and significant in deciding whether the Exclusion applies.[1]

As noted above, a split of authority "exists among the federal courts on the issue of whether a lawsuit against a corporation's former directors and officers brought by a debtor in possession, trustee, creditors' committee, or postconfirmation liquidating trustee triggers the 'insured vs. insured' exclusion in a directors and officers liability insurance policy." 23 EMORY BANKR. DEV. J. at 370.  Courts in some circuits have concluded that the exclusion bars coverage for lawsuits against a company's former directors and officers brought by a plan committee or a trustee, while courts in other circuits have concluded that the exclusion was not triggered in suits by a trustee or other entity against the former directors and officers for breach of fiduciary duty.  *Id.* (footnotes omitted).  "The primary intent of the development of the 'insured vs. insured' exclusion was to prevent collusive lawsuits in which an insured corporation would in essence 'force' its insurer to pay for the poor business decisions of its officers and directors by the corporation filing an action against its own officers and directors." *Id.* (footnote omitted).  Although collusion is frequently considered in cases deciding the applicability of the insured v. insured exclusion, collusion, in and of itself, may not be an appropriate determinative factor, particularly in the realm of bankruptcy due to the various constituents interested in the reorganization process.  *Id.*

It has been suggested, and is borne out by the case law, that the applicability of the insured v. insured exclusion depends on an examination of the facts of each case and the specific language of the directors and officers liability policy under consideration.  23 EMORY BANKR. DEV. J. at 371;

---

[1]The Court finds no ambiguity in the policy language requiring construction to resolve Plaintiff's motion for summary judgment.

*see also, e.g.*, *In re Buckeye Countrymark, Inc.*, 251 B.R. 839-41; *Fed. Ins. Co. v. Continental Cas. Co.*, No. 2:05-cv-305, 2006 WL 3386625 at *9-*20 (W.D. Pa. Nov. 22, 2006); *Reliance Ins. Co. of Illinois v. Weis*, 148 B.R. 575, 579-83 (E.D. Mo. 1992). It is also suggested that "[t]he constituents in the bankruptcy process, namely, the debtor in possession, Chief Restructuring Officer, plan trustee, bankruptcy trustee, and creditors' committee, and in turn whether the 'insured vs. insured' exclusion applies to each, should be viewed as points on a linear continuum whereby the farther removed from the debtor in possession, the more likely the 'insured vs. insured' exclusion will not apply." 23 EMORY BANKR. DEV. J. at 371 (suggesting courts should consider the following four factors in deciding if an insured v. insured exclusion applies: "1) whether 'true adversity' exists between the litigating parties; 2) the status of the plaintiff at the time the claim is made; 3) the identity of the beneficiaries of the claim, or stated differently, on whose behalf are the claims being pursued; and 4) the reasonable expectations of the parties").

Applying these general propositions as reflective of the case law and the applicable legal principles, the Court concludes that the action by Trustee Zucker against the officers falls within the language of the Exclusion in this case as an action "by, on behalf of, or in the name or right of, the Company or any Insured Person" (JSOF ¶ 70). Here, there is a direct connection between the debtor/company/insureds and the Liquidation Trust, which was created by agreement of the Debtors and the Creditors' Committee. The Settlement Agreement between the Debtors and the Creditors' Committee not only established the Liquidation Trust, but also transferred all causes of action belonging to the *Debtors* to the Liquidation Trust, including causes of action against directors, officers and Insiders, but limiting any recovery on such claims to insurance proceeds (JSOF ¶¶ 16, 21, 23; emphasis added), clearly to the advantage of the debtors/company directors and officers.

13

"Capitol Bancorp transferred and conveyed all claims and causes of action against its own officers, including Joseph Reid, Cristin Reid and Brian English, to the Liquidation Trust" (JSOF ¶ 37). The Liquidation Trust Agreement established a three-member oversight committee (JSOF ¶ 39). Cristin Reid, an officer of the Debtors/Company was one of three members of the Liquidation Trust Oversight Committee. "Cristin K. Reid signed the Liquidation Trust Agreement on behalf of Capitol Bancorp and FCC in her capacity as President of those entities. Cristin K. Reid also signed the Liquidation Trust Agreement in her capacity as a member of the Liquidation Trust Oversight Committee" (JSOF ¶ 42). The Liquidation Trust obtained its right to the cause of action against the officers directly from the Debtors/Company by way of the Settlement Agreement, whether deemed to be "transferred" or assigned. Under these circumstances, as Plaintiff Indian Harbor contends, the Court concludes that the *Zucker* Action falls within the Insured v. Insured Exclusion in the policy, as an action "by, on behalf of, or in the name or right of, the Company or any Insured Person."

These circumstances fall directly in line with the reasoning of analogous cases, including those cited by Plaintiff, in which the courts have found the insured v. insured exclusion to apply. *See Biltmore Assocs.*, 572 F.3d 663; *Weis*, 148 B.R. 575; *Terry v. Fed. Ins. Co.* (*In re R.J. Reynolds—Patrick County Memorial Hospital, Inc.*), 315 B.R. 674 (Bankr. W.D. Va. 2003). The reasoning in these cases is on-point and persuasive. The Settlement Agreement effectively permitted the Trust/Liquidation Trustee to step into the proverbial shoes of the Debtors for purposes of suing the directors/officers. *See Weis*, 148 B.R. at 581 ("a trustee (or as in this case, a liquidation and distribution agent), stands in the shoes of the debtor corporation in prosecuting a cause of action belonging to the debtor …."). In *Weis*, the court concluded that the plan committee's action alleging breach of fiduciary duty and negligence was "on behalf of" the corporation and its bankruptcy estate

14

even though the benefits sought might inure to the creditors. *Id.* at 583. Significantly, in *Weis*, the plan committee was comprised of three individual creditor representatives, excluding "those which have a conflict of interest," *id.* at 582, an even more remote connection with the debtor corporation than in this case where the Settlement Agreement and the Liquidation Trust Oversight Committee directly involved an officer of the Debtors (Cristin Reid).

Likewise, in *Biltmore*, the court concluded that for purposes of the insured v. insured exclusion, the prefiling company and the company as debtor in possession in chapter 11 are the same entity. *Biltmore Assocs.*, 572 F.3d at 671. The court rejected the argument that the "claim [was] on behalf of the creditors and brought by the creditors' trustee, Biltmore, and so it [was] not 'brought or maintained on behalf of an Insured in any capacity.'" *Id.* at 669. "A cause of action for mismanagement belongs to the corporation. … That the creditors rather than the shareholders will get whatever money the insurer pays does not avoid the exclusion." *Id.* The *Biltmore* Court's discussion of the meaning of the insured versus insured exclusion is particularly enlightening and provides a common sense rationale for the result there as well as here. *See id.* at 668-69. The court explained:

> As shareholder's derivative suits and class actions against directors and officers became more common, people began to demand that companies indemnify them against the risks of liability if they were to serve as directors and officers. Corporations accordingly bought liability insurance for their directors and officers to induce qualified people to serve. Insured versus insured exclusions are boilerplate in these and other kinds of liability policies. Directors and officers liability policies are colloquially called "D & O insurance." The exclusion arose in D & O policies as a reaction to several lawsuits in the mid-1980s in which insured corporations sued their own directors to recoup operational losses caused by improvident or unauthorized actions. Such lawsuits created problems of moral hazard, collusion, and unintended expansion of coverage. The reasonable expectations of the parties were that they were protecting against claims by outsiders, not intracompany claims.

*Id.* at 668 (footnotes omitted).

The *Zucker* Action is in effect an intracompany claim as opposed to a shareholder derivative suit or employment claim recognized as exceptions to the Insured v. Insured Exclusion properly within liability insurance coverage.  *See Biltmore Assocs.*, 572 F.3d at 668.  The Court does not find Defendants' arguments to the contrary persuasive.

The decision in *In re R.J. Reynolds*, 315 B.R. 674, is also supportive of Plaintiff Indian Harbor's position that the Insured v. Insured Exclusion applies.  There, the court distinguished between causes of action obtained by an assignment voluntarily effected by a debtor as part of its confirmed plan and those arising by appointment of a chapter 11 trustee.  *Id.* at 679.  The court found that the debtor's voluntary creation of the trust and assignment of the underlying claims against the officers did not permit either the debtor or the trustee to circumvent the exclusion provided by the insured v. insured clause.  *Id.*  "Because a chapter 11 debtor-in-possession is a different entity than a chapter 11 trustee that is appointed by the court, claims by a debtor-in-possession, or its assignee, against a director or officer might possibly be precluded by an IVI [insured v. insured] clause while the same action against the same director or officer brought by a chapter 11 trustee in the same case might not be excluded by an IVI clause."  *Id.* at 680 (stating: "The Trustee in this case is a mere assignee.  His rights arise by virtue of provisions in the plan, not directly by operation of statute.").  "In a case in which the debtor voluntarily transfers the causes of action to a third party, there is the distinct possibility of collusion between the debtor and the directors and officers."  *Id.* at 681 (footnote omitted).[2]

_____

[2]As noted by the court in *In re R.J. Reynolds*, the Court's discussion of incentives for collusion in this Opinion are presented only to distinguish the policy concerns that arise, and are not meant to imply that the parties have engaged in any collusive activity.  *See In re R.J. Reynolds*, 315 B.R. at 681 n.5.

Other courts have acknowledged the distinctions recognized in *In re R.J. Reynolds*, even in concluding that the insured v. insured exclusion did not apply. *See In re Central Louisiana Grain Co-op., Inc.*, 467 B.R. 390 (holding that the exclusion did not apply to a Chapter 7 trustee). In *In re Central Louisiana Grain Co-op*, the court cited at length to the reasoning in *In re R.J. Reynolds*:

> Even in *R.J. Reynolds–Patrick County Memorial Hospital* and similar decisions holding that the insured versus insured exclusion applies to debtors-in-possession and plan committees/trusts, the courts distinguished those cases from cases where, as here, the claims are brought by a duly appointed Chapter 11 or 7 trustee. 315 B.R. at 679–82. In *R.J. Reynolds–Patrick County Memorial Hospital*, the court observed that the exclusion would likely not apply to claims brought by a bankruptcy trustee because, while a "pre-petition debtor is the same entity as a debtor-in-possession," a "debtor-in-possession is not the same entity as the Chapter 11 trustee." The court also noted that a plan committee or liquidating trust is different from a court-appointed trustee in that the claims asserted by a plan committee/trust result from the "voluntary assignment, through the Plan" of the claims, while the appointment of a trustee "is almost always effected in contravention of the wishes of a debtor." *Id.* In other words, claims brought by a Chapter 11 or 7 trustee do not typically raise any danger of collusion.

*In re Central Louisiana Grain Co-op., Inc.*, 467 B.R. at 397. The same reasoning distinguishes the circumstances in this case to persuade this Court that the Insured v. Insured Exclusion applies.

Both the Trustee and the Bancorp Defendants cite *In re Buckeye* as analogous and directly on point in holding that the insured v. insured exclusion did not apply to a Chapter 7 trustee who filed suit against nine of the debtor's former directors (Dkt 38 at PageID.1355-1356; Dkt 39 at PageID.1381-1382). *In re Buckeye* is easily distinguishable. There the court relied on the "very real differences" between the debtor and the trustee: the bankruptcy trustee was a separate legal entity; the trustee and the debtor often take adversarial positions; they were not alter egos of each other; the trustee represents the bankruptcy estate and not the debtor and brings his claims on behalf of the debtor's creditors rather than on behalf of the debtor, and expressly, that when the bankruptcy trustee is "acting as a genuinely adverse party to the defendant officers and directors, there is no

17

threat of collusion." *In re Buckeye*, 251 B.R. at 840-41.  Those facts are not reflective of this case where the Debtors/officer entered into an agreement to transfer the Debtors' right to a cause of action against the directors/officers (now asserted by the Liquidation Trustee/Plaintiff), yet provided that "amounts they shall be required to pay on account of causes of action transferred by the Debtors to the Liquidating Trust shall be 'strictly limited' to amounts actually recovered from insurance" (JSOF ¶ 23).  Such a relationship cannot be considered genuinely adversarial.

Upon full consideration of the policy language and the circumstances of this case, the Court is persuaded that the Insured v. Insured Exclusion in the Indian Harbor Insurance policy bars the *Zucker* Action.

## B.  Applicable Policy

Plaintiff argues that the trustee's suit is outside the scope of the 2010 Policy, because both the 2010 and the 2011 policies are "claims made" policies, which cover only claims first made during their applicable policy periods.  Plaintiff asserts that here, the 2010 Policy Period expired years before the Trustee filed his complaint; thus, the 2010 Policy does not apply.

Defendant Zucker concedes the inapplicability of the 2010 Policy, and therefore has not opposed Summary Judgment on Count II of the Complaint (Dkt 38 at PageID.1349 n.1).  The Capitol Defendants (Joseph and Cristin Reid and Brian English) accept Plaintiff's "concession" that "the *Zucker* Action was a claim made during the 2011-2014 policy period" (Dkt 39 at PageID.1386).  However, they contend that because (1) the Insured vs Insured Exclusion is identical in the 2010 Policy and the 2011 Policy, and Plaintiff's Complaint purports to reserve the right to assert various exclusions not addressed in this motion, the enforceability of the 2010 Policy need not be resolved

now.  Further, to the extent that any argument that Plaintiff has reserved may require the Capitol Defendants to alternatively claim coverage under the 2010 Policy, they reserve the right to do so.

Because all parties essentially concur in the inapplicability of the 2010 Policy for purposes of this motion, the Court finds no sound basis for reserving this issue, and the 2010 Policy is deemed inapplicable in resolving whether the *Zucker* Action is barred by the Insured v. Insured Exclusion. Given the Court's grant of summary judgment on Counts I and II, it appears that the consideration of any other exclusions under Court III are no longer at issue.  Should that not be the case, the propriety of Plaintiff's invocation of other 2010 policy exclusions will be considered in light of Plaintiff's arguments in the present motion that the 2010 Policy is inapplicable.

### V.  Conclusion

On the record and arguments presented, the Court concludes that Plaintiff Indian Harbor Insurance Company's Motion for Summary Judgment is properly granted.  An Order will enter consistent with this Opinion.


Dated: March  31 , 2016                                    /s/ Janet T. Neff
                                                          _____
                                                          JANET T. NEFF
                                                          United States District Judge

19